985 So.2d 23 (2008)
Daniel N. WILLIAMS and Anita Williams; Robert Plummer, as Personal Representative for Wayne Smith; Edward Nixon and Georgia M. Nixon; Peter Ruben Britt and Gloria Britt; Bill R. Martinez; Earl J. Mixon; Charlie M. Pittman and Teola Pittman; Merrell A. Ponder Jr. and Kay Ponder; Floyd H. Perry; Russel Thomas Fink; Lewis Martin; Walter R. Spiewak and Betty J. Spiewak, Appellants,
v.
AMERICAN OPTICAL CORPORATION; Acands, Inc.; AC & S, Inc.; Eastern Refractories, Bird, Inc.; Certain Teed Corporation; Cleaver Brooks; Crane Co.; John Crane, Inc.; Weil-McClain Company; Flowserve Corporation; General Electric Company; Goulds Pumps, Inc.; Hobart Brothers Company; Kelly-Moore Paint Company, Inc.; Lincoln Electric Company; TH Agriculture & Nutrition, LLC.; The Goodyear Tire & Rubber Co.; and Bondex International, Inc., Appellees.
Nos. 4D07-143 to 4D07-151, 4D07-153, 4D07-154, 4D07-405, 4D07-407.
District Court of Appeal of Florida, Fourth District.
May 28, 2008.
Rehearing Denied July 25, 2008.
*25 David A. Jagolinzer, James L. Ferraro, and Case A. Dam of The Ferraro Law Firm, Miami, and Joel S. Perwin, P.A., Miami, for appellants.
John H. Pelzer and Robin F. Hazel of Ruden McClosky, Smith, Schuster & Russell, P.A., Fort Lauderdale, and Michael R. Holt of Rumberger, Kirk & Caldwell, P.A., Miami, for appellees.
Frank Cruz-Alvarez of Shook, Hardy & Bacon, L.L.P., Miami, for Amicus Curiae of the Associated Industries of Florida, American Insurance Association, National Federation of Independent Business Legal Foundation, Chamber of Commerce of the United States of America, American Chemistry Council, and National Association of Manufacturers.
Daniel P. Mitchell of Barr Murman & Tonelli, Tampa, for Amicus Curiae Florida Defense Lawyers Association.
FARMER, J.
We have cobbled these cases together for decision because all present the same dispositive issue, which we state thus:
Can the Florida Asbestos and Silica Compensation Fairness Act be retroactively applied to prejudice or defeat causes of action already accrued and in litigation?
We hold that the Act cannot constitutionally be so applied and return the cases to the trial court for consistent proceedings.
Litigation in Florida state courts involving asbestos contamination has been considerable and persistent for a number of years. Prompted by that, the Florida Legislature decided to enact the Florida Asbestos and Silica Compensation Fairness *26 Act, which became effective in 2005.[1] The Act made significant changes to the cause of action for damages resulting from an exposure to asbestos. The issue we confront involves the nature of those changes.
Before the Act was adopted, all of the plaintiffs in these cases had filed actions for damages based on various degrees of asbestosis  that is, interstitial lung disease resulting from asbestos exposure and pleural thickening. According to plaintiffs, when they filed their lawsuits before the Act's adoption it was not necessary to establish that any malignancy or physical impairment had already resulted from their contraction of the disease asbestosis. Instead, they claim, it was merely necessary for them to show that they had suffered an injury from an asbestos-related disease.
Under the Act, however, a claimant bringing an action for damages from exposure to asbestos must now, as an indispensable element, plead and prove an existing malignancy or actual physical impairment for which asbestos exposure was a substantial contributing factor.[2] Plaintiffs' asbestosis claims were dismissed for failing to meet the requirements of the Act. They challenge the Act on the grounds that by this legislation the government of Florida has taken from them a personal right in a cause of action for money damages arising from the exposure to asbestos even if the injury has not yet become malignant or caused any physical impairment.[3] We thus briefly survey the powers of State government to adversely affect plaintiffs' cause of action as filed before the adoption of the Act.
Here we confront the personal rights of citizens to acquire, defend and keep their own property free from the claims of government, and to vindicate these rights in a court of law.[4] There are various forms of property in which a person may have rights. For most forms, real or personal, tangible or intangible, the government may not take these rights through legislation unless it has a public purpose for such property and pays the owner fair compensation.[5]
One form of intangible property is a cause of action. This is a right grounded in tort, property or contract law to recover a judgment for money or property from another person whose conduct or activity is deemed by applicable law to have caused the claimant to suffer damage or a loss. This is the form of property involved in these cases. The general rule as to property rights is well stated in *27 McCord v. Smith, 43 So.2d 704, 708-09 (Fla.1949):
"A retrospective provision of a legislative act is not necessarily invalid. It is so only in those cases wherein vested rights are adversely affected or destroyed or when a new obligation or duty is created or imposed, or an additional disability is established, on connection with transactions or considerations previously had or expiated."
43 So.2d at 708-09. When the cause of action accrues it becomes "[a] substantive vested right . . . an immediate right of present enjoyment, or a present fixed right of future enjoyment." Clausell v. Hobart Corp., 515 So.2d 1275, 1276 (Fla. 1987) (quoting In re Will of Martell, 457 So.2d 1064, 1067 (Fla. 2d DCA 1984)).
Whether legislation may affect a vested right to a particular cause of action depends on the stage the right has attained when the legislation is enacted. In its earliest stage  before any harm or invasion has occurred  a right to sue is inchoate, a mere prospect. At that stage, it is an expectation that if another person does someday engage in specific conduct or activity causing some injury, and a specific cause of action has then accrued, the person so aggrieved may then be able to bring an action in court to vindicate the claim in money damages.
Florida law is well established that the right to sue on an inchoate cause of action  one that has not yet accrued  is not a vested right because no one has a vested right in the common law, which the Legislature may substantively change prospectively. See § 2.01, Fla. Stat. (2007) ("The common laws of England with the exception hereinafter mentioned are declared to be of force in this state; provided the common law be not inconsistent with the acts of the Legislature of this state [e.s.]."); Clausell v. Hobart Corp., 515 So.2d 1275, 1275-76 (Fla. 1987) ("a person has no property, no vested interest, in any rule of the common law") (quoting Duke Power Co. v. Carolina Envir'l Study Group Inc., 438 U.S. 59, 88, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978)); Hart v. Bostwick, 14 Fla. 162, 180 (1872) ("where mere inchoate rights are concerned, depending for their original existence on the law itself, they are subject to be abridged or modified by law"); but see Kluger v. White, 281 So.2d 1, 4 (Fla.1973) ("where a right of access to the courts for redress for a particular injury . . . has become a part of the common law of the State . . . the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown.").
At the other end of the spectrum is a cause of action that has evolved into a money judgment. Here the right is indeed vested and may not be abrogated by legislation. As the court explained in State Department of Transportation v. Knowles, 402 So.2d 1155 (Fla.1981):
"Knowles' right to sue Gregg had been replaced by a jury's determination both that Gregg was liable to Knowles for injuries, and that the damages suffered by Knowles were $70,000. . . . Stripped of conciliatory phrases the question is whether a state legislature can take away from a private party a right to recover money that is due when the act is passed. We hold . . . that it cannot"
402 So.2d at 1158-59.
That brings us to the stages between those two extremes. In these stages, an act or event has already occurred affecting *28 a claimant and has been transformed into an accrued right to sue. Suit may not yet have been brought, on the one hand; or suit may have already been brought, on the other hand, but no outcome has been reached in any litigation. As it turns out, both of these stages involve vested rights.
Where a cause of action has accrued but claimant has not yet filed an action for damages when new legislation substantively affecting the cause of action becomes effective, the new statute may not be applied to the cause of action when filed. See Alamo Rent-A-Car Inc. v. Mancusi, 632 So.2d 1352, 1358 (Fla.1994) (statute limiting punitive damages which became effective October 1, 1987, could not be retroactively applied to cause of action accruing September 1986 and not filed until October 2, 1987). And it logically follows that if a new statute cannot defeat a cause of action that is accrued but not yet filed, it is even more ineffective to defeat an action already filed when it becomes effective. See Rupp v. Bryant, 417 So.2d 658 (Fla.1982) (1980 amendment to tort immunity statute abolishing pending right to recover could not validly be applied to pending lawsuits).[6]
The question therefore devolves into an inquiry whether plaintiffs are correct in their assertion that before the statute was enacted Florida law recognized a cause of action for damages arising from the disease of asbestosis without any permanent impairment or the presence of cancer. Our research confirms their assertion. In Eagle-Picher Industries Inc. v. Cox, 481 So.2d 517 (Fla. 3d DCA 1985), plaintiff contracted asbestosis and sued the supplier of the asbestos for incurring the disease, and for the negligent infliction of emotional distress suffered as a result of inhaling it. The court concluded that his exposure to the asbestos satisfied the impact rule. Accordingly, he was not required to establish any physical manifestation of his alleged emotional distress in order to recover from the manufacturer of the asbestos products to which he had been exposed. The negligent infliction of emotional distress resulting from the increased probability of contracting cancer in the future was actionable without further physical injuries.
In Zell v. Meek, 665 So.2d 1048 (Fla. 1995), the Florida Supreme Court approved of the holding in Cox. The court noted that the Third District "had determined that the inhalation of asbestos fibers, which over time causes serious lung damage, constituted an impact" and said: "This formulation is consistent with our own holdings." 665 So.2d at 1050 n. 1. Later, in Willis v. Gami Golden Glades LLC, 967 So.2d 846 (Fla.2007), the Florida Supreme Court again approved Cox. This time the court added that "we approved the Third District's statement [that] `The essence of impact, then . . . is that the outside force or substance, no matter how large or small, visible or invisible, and no matter that the effects are not immediately deleterious, touch or enter into the plaintiff's body.'" [e.s.] 967 So.2d at 850. Clearly this holding establishes that genuine emotional effects from contracting asbestosis are actionable under Florida law even though no physical impairment or cancer has resulted. See also W.R. Grace & Co. v. Pyke, 661 So.2d 1301 (Fla. 3d DCA 1995) (asbestos-related disease from exposure to asbestos; medical testimony that "asbestos-related disease was essentially mild and in the early stages and plaintiff admitted that no doctor had ever told him that he could not work;" DCA reversed award of damages for loss of *29 future earning capacity but allowed damages for pain and suffering to stand).[7]
In addition the Florida Supreme Court has itself recognized facts about asbestos exposure and the resulting diseases that justify the recognition of a cause of action even though no physical impairment or cancer has yet resulted. In Celotex Corp. v. Copeland, 471 So.2d 533, 538 (Fla.1985), the court explained:
"Asbestos products . . . have widely divergent toxicities, with some asbestos products presenting a much greater risk than others. This divergence is caused by a combination of factors, including: the specific type of asbestos fiber incorporated into the product; the physical properties of the product itself; and the percentage of asbestos used in the product. There are six different asbestos silicates used in industrial applications and each presents a distinct degree of toxicity in accordance with the shape and aerodynamics of the individual fibers. Further, it has been established that the geographical origin of the mineral can affect the substance's harmful effects. A product's toxicity is also related to whether the product is in the form of a solid block or a loosely packed insulating blanket and to the amount of dust a product generates. The product's form determines the ability of the asbestos fibers to become airborne and, hence, to be inhaled or ingested. The greater the product's susceptibility to produce airborne fibers, the greater the product's potential to produce disease. Finally, those products with high concentrations of asbestos fibers have corresponding high potentials for inducing asbestos-related injuries. . . .
"[I]n a case where the injury is a `creeping-disease,' like asbestosis, the action accrues when the accumulated effects of the substance manifest themselves in a way which supplies some evidence of the causal relationship to the manufactured product. . . . [Plaintiff's] condition `slowly deteriorated until he retired in April 1975. At that time he was unable to work due to shortness of breath, a symptom consistent with emphysema.' [c.o.] The record reflects that [plaintiff] was not diagnosed as having asbestosis until 1978. We agree with the district court that, under these circumstances, when the disease manifested itself was a question of fact not subject to resolution by summary judgment."
*30 471 So.2d at 538-39. Similarly, in Celotex Corp. v. Meehan, 523 So.2d 141, 150 n. 2 (Fla.1988), the court added:
"The primary asbestos-related diseases are asbestosis, mesothelioma, and lung cancer. Although all result from exposure to asbestos, their etiology is very different. When asbestos particles enter the lungs, fibrous lung tissue surrounds the particles. When the encapsulation process diminishes pulmonary function and makes breathing difficult, the disease of asbestosis is said to be present. There is usually a latent period of 10 to 25 years between initial exposure and apparent effect. How many years of breathing asbestos it takes for asbestos to occur varies from person to person. Some workers exposed for 40 years or more will not become diseased at all whereas others exposed for shorter periods of time at lower concentrations will contract asbestosis. If the asbestosis is not seriously advanced, an individual may continue to lead a relatively normal life. Although the disease is progressive once it begins and is incurable, it is not cancerous. Mesothelioma, on the other hand, is a rare form of cancer, invariably fatal, which occurs in the mesothelial cells which line the chest wall and surround the organs of the chest cavity. The latency period may be from 20 to 40 years or more. The development of asbestos-related lung cancer is similar to that of mesothelioma. Although the correlation between asbestos and lung cancer is not established, it appears that inhalation of asbestos increases the risk of lung cancer in persons who smoke. The disease generally occurs 15 to 35 years after exposure and is incurable."
523 So.2d at 150 n. 2. Plaintiffs' assertion of a previously recognized cause of action without physical impairment or cancer is entirely consistent with these two explanations by the supreme court.
Defendants' argument that plaintiffs can have no vested right in their claimed cause of action because it is a mere expectancy is not supported by the applicable and authoritative cases. In City of Sanford v. McClelland, 121 Fla. 253, 163 So. 513 (1935), the Court defined a vested substantive right as "`an immediate, fixed right of present or future enjoyment' and also as `an immediate right of present enjoyment, or a present, fixed right of future enjoyment.'" 163 So. at 514-15 (quoting Pearsall v. Great Northern R. Co., 161 U.S. 646, 16 S.Ct. 705, 40 L.Ed. 838 (1896)). The right to pursue a cause of action is generally considered to have become vested when the cause of action has accrued. R.A.M. of So. Fla. Inc. v. WCI Communities Inc., 869 So.2d 1210, 1218 (Fla. 2d DCA 2004). A cause of action accrues when "the last element constituting the cause of action occurs." § 95.031(1), Fla. Stat. (2007). Constitutionally, a new statute becoming effective after a cause of action has already accrued may not be applied to eliminate or curtail the cause of action. See Forbes Pioneer Boat Line v. Bd. of Comm'rs, 258 U.S. 338, 339, 42 S.Ct. 325, 66 L.Ed. 647 (1922) (holding that the "legislature [could not] take away from a private party a right to recover money that is due when the [legislative] act is passed"); Rupp v. Bryant, 417 So.2d at 666 (holding "due process considerations" precluded retroactive application of amendments to tort immunity statute where such application would abolish vested right to recover from persons who were not immune from liability when tort claim arose). It is simply not accurate to say that the cases we confront involve mere expectancies. In each of them, plaintiffs allege a previous exposure to asbestos resulting in the disease of asbestosis, which in turn had manifested itself in *31 some way. Thus, for each, the cause of action had passed from an expectation to the accrual of the right to sue for damages.
Rules of law have in common a general applicability, according to their terms, insuring a reliable and predictable application not dependent on which side of the litigation asserts them. Hence we can more fully understand plaintiffs claim of vested right by comparing how the courts apply the same vested rights rule to the corresponding interest  an immunity from liability  of parties defending against asbestosis claims. One line of cases, Battilla-Pullum, is especially instructive because it involved the application of the products liability statute of repose to claims analogous to those brought by plaintiffs in these cases.
In Battilla v. Allis Chalmers Manufacturing Company, 392 So.2d 874 (Fla. 1980), the Florida Supreme Court first held the 12-year statute of repose invalid as a denial of access to the courts. Five years later, in Pullum v. Cincinnati Inc., 476 So.2d 657 (Fla.1985), appeal dismissed, 475 U.S. 1114, 106 S.Ct. 1626, 90 L.Ed.2d 174 (1986), however, the same court changed its mind and held the statute valid, receding from Battilla. One year after Pullum, the Legislature itself then repealed the statute. Later, cases reached the court involving injuries occurring more than 12 years after the product had been distributed. Defendants argued that the lapse of the 12-year repose period while the statute was effective bestowed on them a vested right to immunity from liability for such claims. In Firestone Tire and Rubber Company v. Acosta, 612 So.2d 1361 (Fla. 1992), the court held that a right of immunity under the statute of repose became vested when the prescribed repose period had fully lapsed before the claim accrued, and that the ensuing statutory repeal could not defeat that immunity. Even later still, in Wiley v. Roof, 641 So.2d 66 (Fla.1994), where the court applied the same rationale used in Acosta to an amendment to the limitations period for incest, the court emphasized:
"The law does not prioritize rights over remedies. Once the defense of the statute of limitations has accrued, it is protected as a property interest just as the plaintiff's right to commence an action is a valid and protected property interest."
641 So.2d at 68. We would add that, equally, the Constitution's guarantee of due process of law does not prefer defenses over causes of action in vested rights analysis. The rule of law is that the right to commence an action and the defensive right of repose both become vested when an event occurs that triggers either the right to sue for damages, or the immunity from liability, and these rights may not be defeated by later legislation.
We now come to decision of the Third District in DaimlerChrysler Corporation v. Hurst, 949 So.2d 279 (Fla. 3d DCA 2007). Defendants contend that it is applicable to this case and that we should follow it. Plaintiffs respond that Hurst is distinguishable. They point out that the plaintiff in Hurst suffered from lung cancer and had smoked but was unable to offer any medical evidence that his lung cancer was related to asbestos. Plaintiffs suggest that even under the law existing before the Act the result in Hurst might have been sustained because of the lack of any proof that asbestos was a proximate or even concurring cause of lung cancer.
We agree that these circumstances distinguish Hurst from the cases we face today. The problem is that many are reading Hurst to be far more categorical in its holding. Plaintiffs contend that Hurst is being applied to dismiss asbestosis cases like the present ones in which there is no cancer injury or any failure to *32 link asbestos to the injury. To be sure, the Hurst opinion does appear to hold that plaintiffs have no vested rights even in the differing claims we confront in these lawsuits. And so we certify conflict with Hurst to the extent that it does stand for a holding that the Act may be validly applied to asbestosis claimants with accrued causes of action for damages but without permanent impairments or any malignancy. The Hurst plaintiff faced the identical circumstance the plaintiffs in these consolidated cases face, except that he had lung cancer but was unable to show that it resulted from asbestos exposure. In any event, if he had asbestosis along with his lung cancer, his cause of action was no longer a mere expectancy but had matured into a fully realized, accrued cause of action.
We necessarily apply the same neutrality of the vested rights rule of law to these cases in which new legislation seeks to effect substantive changes in accrued, and therefore vested, causes of action for asbestosis in which no malignancy or physical impairment is present or claimed. Here, the event triggering the right had already taken place when the statutory change was enacted, just as in Acosta. The law existing before the Act was adopted did not bar or limit recovery from asbestos contamination when there was no accompanying malignancy or physical impairment. Under the rationale of Acosta and Wiley, this new statute may not constitutionally be applied to eliminate the existing vested rights in the lawsuits pending when the Act became effective.
We must thence decide whether any remaining parts of the Act are separable from the invalid parts and, if they are, allow at least the valid parts to be enforced. Severability analysis requires us to consider: (1) if the legislative purpose of the valid provisions can be enforced separately from those that are void; (2) if the valid and invalid features cannot be separated, whether the Legislature would have passed the one without the other; and (3) whether the Act is complete in itself with invalid provisions stricken. See Florida Hosp. Waterman Inc. v. Buster, 984 So.2d 478 (Fla. 2008) (quoting Moreau v. Lewis, 648 So.2d 124, 128 (Fla.1995), and Presbyterian Homes v. Wood, 297 So.2d 556, 559 (Fla.1974)).
After giving the entire text of the Act  especially its preamble of purpose  a careful reading in light of these considerations, we conclude that it is not intellectually possible on the basis of any recognized principles to disconnect the several provisions of an Act whose singular purpose is to end litigation by claimants who have been damaged by asbestos exposure without resulting malignancy or physical impairment. That purpose pervades every word in the Act. The entire Act is tied to that aim. We are simply forced to acknowledge that as regards these cases of accrued causes of action, after eliminating its very raison d'être, nothing meaningful in the Act could possibly remain.
We therefore hold that the Act in its entirety may not constitutionally be applied to require claimants with accrued causes of action for damages resulting from exposure to asbestos to plead and prove that any malignancy or physical impairment resulted from their exposure to asbestos.[8] Instead their accrued causes of action required them to show only that they suffered an injury from an asbestos-related, non-malignant disease. These trial *33 court decisions to the contrary are reversed and the cases are returned for consistent proceedings.
STEVENSON and TAYLOR, JJ., concur.
NOTES
[1] See Ch. 2005-274, § 10, Laws of Fla. The Act is codified at Chapter 774, Part II, Florida Statutes (2007).
[2] See § 774.204(1), Fla. Stat. (2007).
[3] See § 774.204(2), Fla. Stat. (2007).
[4] See Art. I, § 2, Fla. Const. ("All natural persons . . . have inalienable rights, among which are the right to . . . acquire, possess and protect property . . ."); Art. I, § 9, Fla. Const. ("No person shall be deprived of . . . property without due process of law . . ."); Art. I, § 21, Fla. Const. ("The courts shall be open to every person for redress of any injury . . ."). Of course, individuals may grant to the government  or any other person, for that matter  a mortgage or lien right, which is of course a consensual transfer.
[5] See Art. X, § 6, Fla. Const. ("No private property shall be taken except for a public purpose and with full compensation therefor paid to each owner . . ."); see also In re Forfeiture of 1976 Kenworth Tractor-Trailer Truck, 576 So.2d 261 (Fla.1990) ("The constitutional provision that no private property shall be taken except for public purpose and with full compensation applies equally to real and personal property, including motor vehicles.").
[6] In both Mancusi and Rupp, the legislative change was substantive.
[7] Federal courts applying Florida law have reached the same conclusion. See Landry v. Fla. Power & Light Corp., 799 F.Supp. 94, 96 (S.D.Fla.1992) ("In Eagle-Picher, the plaintiff who had been exposed to asbestos suffered a physical injury, asbestosis, and was therefore, able to recover damages for negligent infliction of emotional distress. This requirement is imposed to insure that only genuine claims are permitted."); In re Asbestos Litigation, 679 F.Supp. 1096, 1100 (S.D.Fla.1987) ("It is well settled under substantive Florida law that evidence relating to an asbestos victim's increased risk of cancer is admissible in an appropriate case to demonstrate that a plaintiff `had a present mental distress caused by his fear of getting cancer in the future.' [citing Cox])". On two different occasions, the United States Supreme Court has recognized that the view adopted by the Florida courts is consistent with the common law and is the prevailing view. See Norfolk & Western Ry. Co. v. Ayers, 538 U.S. 135, 150-51, 123 S.Ct. 1210, 155 L.Ed.2d 261 (2003) ("Many courts in recent years have considered the question presented here  whether an asbestosis claimant may be compensated for fear of cancer. Of decisions that address the issue, a clear majority sustain recovery." [citing Cox]); and Metro-North Commuter R. Co. v. Buckley, 521 U.S. 424, 432, 117 S.Ct. 2113, 138 L.Ed.2d 560 (1997) (under common law plaintiff could recover for negligently inflicted emotional distress for exposure to asbestos if he manifests symptoms of disease).
[8] In reaching this holding we make explicit that we have necessarily construed provisions of the state constitution and, in the event, have consequently found the Act invalid as applied in these cases.