995 So.2d 566 (2008)
JAYLENE, INC.; Candansk, LLC; Dansk Management, Inc.; Arfind America, Inc.; 1521030 Ontario, Inc.; Arlene Agnus Christiansen; Find U. Christiansen; Jacqueline F. Hurt; Barbara Gallagher; Kathleen Sylvia; Lynn Taggart; and Paul John Prybylski, Appellants,
v.
Deborah A. MOOTS, as Personal Representative of the Estate of Ethelwin A. Crisson, deceased; ACMC-CNH, Inc.; Senior Management Services, Inc.; and Kimberly Ann Gibb (as to Carrington Place), Appellees.
No. 2D08-707.
District Court of Appeal of Florida, Second District.
September 12, 2008.
Rehearing Denied November 14, 2008.
*567 Mara B. Levy and Mark B. Hartig of McCumber, Daniels, Buntz, Hartig & Puig, P.A., Tampa, for Appellants.
Susan B. Morrison of Law Offices of Susan B. Morrison, P.A., Tampa, and Isaac R. Ruiz-Carus and Blair N. Mendes of Wilkes & McHugh, P.A., Tampa, for Appellee Deborah A. Moots.
No appearance for Appellees ACMC-CNH, Inc.; Senior Management Services, Inc., and Kimberly Ann Gibb.
WALLACE, Judge.
Jaylene, Inc.; Candansk, LLC; Dansk Management, Inc.; Arfind America, Inc.; 1521030 Ontario, Inc.; Arlene Agnus Christiansen; Find U. Christiansen; Jacqueline F. Hurt; Barbara Gallagher; Kathleen Sylvia; Lynn Taggart; and Paul John Prybylski (collectively Jaylene) appeal a nonfinal order that denied their motion to compel arbitration in a nursing home resident's rights lawsuit filed by Deborah A. Moots, as Personal Representative of the Estate of Ethelwin A. Crisson, deceased.[1] Ms. Moots' complaint asserted multiple claims against the defendants below, including claims that Jaylene had violated the rights of the decedent under section 400.022, Florida Statutes (2000 and 2001). Jaylene filed a motion to compel arbitration in accordance with an arbitration clause in the Agreement for Care (the Agreement) that Ms. Moots had executed on May 11, 1999, as the decedent's attorney-in-fact under her durable power of attorney (the POA). The circuit court denied Jaylene's motion to compel arbitration, finding that the "arbitration clause herein is valid, but the Power of Attorney did not authorize the agent to agree to arbitration." Because we conclude that Ms. Moots had the authority under the POA to agree to arbitrate claims arising out of the Agreement, we reverse.

THE FACTUAL BACKGROUND
The decedent executed the POA in favor of Ms. Moots on December 4, 1997, approximately seventeen months before Ms. Moots executed the Agreement as attorney-in-fact for the decedent. The arbitration clause contained in the Agreement provided:

*568 12. OPTIONAL ARBITRATION CLAUSE (If the parties to this Agreement do not wish to include the following arbitration provision, please indicate so by marking an "X" through this clause. Both parties shall also initial that "X" to signify their agreement to refuse arbitration.) Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration in accordance with the provisions of the Florida Arbitration Code found at Chapter 682, Florida Statutes, and judgement [sic] upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.
The parties to the Agreement did not mark an "X" through the arbitration clause.
The POA does not contain any provisions specifically granting the attorney-in-fact the power to consent to arbitration or to waive the decedent's right to a jury trial. Nevertheless, the grant of authority to the attorney-in-fact under the POA is extremely broad and unambiguous. In pertinent part, the POA provides:
My Agent shall have full power and authority to act on my behalf. This power and authority shall authorize my Agent to manage and conduct all of my affairs and to exercise all of my legal rights and powers, including all rights and powers that I may acquire in the future.
Consistently with this general grant of authority, the POA is titled, "GENERAL POWER OF ATTORNEY."
In addition to the extensive grant of power quoted in the preceding paragraph of this opinion, the POA also includes a comprehensive list of specific powers granted by the principal to the attorney-in-fact. The list of powers specifically granted is preceded by language indicating that the listing of certain specific powers is not intended to be exhaustive. The powers specifically listed include the powers to:
4. Take any and all legal steps necessary to collect any amount or debt owed to me, or to settle any claim, whether made against me or asserted on my behalf against any other person or entity.
5. Enter into binding contracts on my behalf.
The list of powers specifically granted to the attorney-in-fact is succeeded by the following provision: "This Power of Attorney shall be construed broadly as a General Power of Attorney. The listing of specific powers is not intended to limit or restrict the general powers granted in this Power of Attorney in any manner."

DISCUSSION
The proper interpretation of the POA is a question of law that we review de novo. See Alterra Healthcare Corp. v. Bryant, 937 So.2d 263, 268 (Fla. 4th DCA 2006). Our review of the POA persuades us that it gave the attorney-in-fact the requisite authority to agree to arbitrate claims. The grant of authority to the attorney-in-fact in the POA was virtually all-inclusive.[2] In the POA, the principal gave the attorney-in-fact "full power and authority *569 to act on my behalf." This full power and authority extended to include the authority "to manage and conduct all of my affairs and to exercise all of my legal rights and powers." The POA provided further that it was to "be construed broadly as a General Power of Attorney." The POA unequivocally expresses the principal's intent to make a comprehensive grant of authority to the attorney-in-fact. We conclude that the grant of authority in the POA was broad enough to authorize the attorney-in-fact to consent to arbitrate claims arising out of the Agreement. See Bryant, 937 So.2d at 269.
Ms. Moots correctly points out that the power of attorney under review in the Bryant case specifically authorized the attorney-in-fact to agree to arbitration. Id. at 268. Here, the power to consent to arbitrate the principal's claims was not one of the powers specifically listed in the extensive list of powers explicitly granted. Nevertheless, the POA also provided that "[t]he listing of specific powers is not intended to limit or restrict the general powers granted in this Power of Attorney in any manner." (Emphasis added.) In light of this provision, Ms. Moots' argument that the absence of an express grant of authority to arbitrate in the POA compels a restrictive interpretation precluding the authority to consent to arbitration is unpersuasive.
Moreover, two of the powers specifically mentioned in the POA lend some support to the conclusion that the POA authorizes the attorney-in-fact to consent to arbitration. The POA not only authorizes the attorney-in-fact to "enter into binding contracts," it also authorizes the attorney-in-fact to settle claims held by the principal. Not unlike agreeing to arbitrate, settling a claim typically involves foregoing the remedy of submitting a claim to a court for final adjudication. We are not prepared to state that a grant of the authority to settle claims includes the authority to consent to arbitration. However, the specific grant of authority to settle claims in the document under review in this case is consistent with the view that the POA's broad grant of authority includes the power to consent to arbitration.
The provisions of section 709.08, Florida Statutes (1997), Florida's version of the Uniform Durable Power of Attorney Act, confirm our interpretation of the POA. First, section 709.08(6) provides that "[u]nless otherwise stated in the durable power of attorney, the durable power of attorney applies to any interest in property owned by the principal, including . . . all other contractual or statutory rights or elections." Second, section 709.08(7)(a) provides, in pertinent part:
Except as otherwise limited by this section, by other applicable law, or by the durable power of attorney, the attorney in fact has full authority to perform, without prior court approval, every act authorized and specifically enumerated in the durable power of attorney.
Neither the POA nor the statute limits the attorney-in-fact from agreeing to submit claims to arbitration. The parties have not cited to us (and independent research has not disclosed) authority for the proposition that an attorney-in-fact cannot agree in advance to arbitration on behalf of the principal. Thus reading the POA together with the statute confirms our conclusion concerning the attorney-in-fact's authority to consent to arbitration.
In support of affirmance, Ms. Moots relies on this court's decision in McKibbin v. Alterra Health Care Corp. (In re Estate of McKibbin), 977 So.2d 612 (Fla. 2d DCA 2008). In McKibbin, the resident at an assisted living facility did not sign the residency agreement that included an arbitration agreement. Id. at 613. Instead, *570 the resident's son signed on his mother's behalf under a durable power of attorney from the resident. Id. The McKibbin court noted the limitations of the power of attorney under review in that case as follows:
Nothing in that power of attorney, however, gave Ms. McKibbin's son the legal authority to enter into an arbitration agreement on behalf of his mother. See Kotsch v. Kotsch, 608 So.2d 879, 880 (Fla. 2d DCA 1992) (holding that powers of attorney are strictly construed to grant only the powers specified). Furthermore, there was no other basis upon which to bind Ms. McKibbin to the arbitration agreement. Hence, the Estate was not bound to arbitrate. . . .
Id. For this reason, the McKibbin court held that the circuit court erred in granting Alterra's motion to compel arbitration. Id.
However, McKibbin does not compel a different result here. The McKibbin case is controlling only to the extent that it is possible to determine from the court's opinion that the power of attorney at issue in that case was similar to the POA held by Ms. Moots. See Shaw v. Jain, 914 So.2d 458, 461 (Fla. 1st DCA 2005). But the opinion in McKibbin does not set forth the language of the power of attorney under review in that case. Id. Thus McKibbin is not controlling here where the POA unambiguously makes a broad, general grant of authority to the attorney-in-fact.
We have also considered Ms. Moots' alternative argument that the circuit court's order should be affirmed because "the arbitration agreement violates public policy." This argument is without merit and does not warrant discussion.

CONCLUSION
For the foregoing reasons, we reverse the order denying Jaylene's motion to compel arbitration and remand for the entry of an order staying Ms. Moots' action and compelling arbitration.
Reversed and remanded with directions.
KELLY and KHOUZAM, JJ., Concur.
NOTES
[1] We have jurisdiction in accordance with Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iv).
[2] One paragraph in the POA imposed some limitations of the authority granted to the attorney-in-fact as follows:

Any power or authority granted to my Agent under this document shall be limited to the extent necessary to prevent this Power of Attorney from causing: (i) my income to be taxable to my Agent, (ii) my assets to be subject to a general power of appointment by my Agent, and (iii) my Agent to have any incidents of ownership with respect to any life insurance policies that I may own on the life of my Agent.
These limitations are not material to our analysis.