KELLY, Judge.
 

 The estate of Opal Hicks sued the appellant nursing home, Carrington Place of St. Pete, LLC, its employees, and others alleging negligence, wrongful death, breach of fiduciary duty, and violations of Ms. Hicks’ rights as a resident under section 400.022, Florida Statutes (2007). The appellants moved to dismiss and to compel arbitration, seeking to enforce the arbitration clause in the agreement to admit Ms. Hicks to the nursing home. The agreement had been signed by Sandra Brown-ridge, Ms. Hicks’ daughter, who Ms. Hicks had appointed as her attorney-in-fact by means of a general power of attorney form. The estate opposed the motion to compel arbitration, arguing that the power of attorney Ms. Hicks executed did not give her daughter the specific authority to agree to arbitration on Ms. Hicks’ behalf. Following hearings on the motions, the
 
 *582
 
 trial court denied the appellants’ motion to compel arbitration, finding that the language in the power of attorney did not grant the power to agree to arbitration. In this appeal, the appellants challenge the trial court’s nonfinal order denying their motion. Because the interpretation of a power of attorney is a question of law, we review the trial court’s decision de novo.
 
 See Jaylene, Inc. v. Moots,
 
 995 So.2d 566, 568 (Fla. 2d DCA 2008).
 

 The power of attorney Ms. Hicks executed was a form containing a list of specific powers that the principal could choose to confer on the attorney-in-fact.
 
 [1]
 
 Pertinent here, Ms. Hicks specifically granted her attorney-in-fact the power to “act in my name, place and stead
 
 in any way which I myself could do,
 
 if I were personally present, with respect to ... [c]laims and litigation.” (Emphasis added.) A power of attorney need not expressly refer to arbitration to confer the authority to agree to this method of dispute resolution.
 
 Id.
 
 at 569. Here, the power of attorney authorizes the attorney-in-fact to do anything Ms. Hicks could have done personally with respect to claims and litigation. Because Ms. Hicks could have agreed to arbitration had she been able to act on her own behalf, her attorney-in-fact was likewise authorized to do so.
 

 The estate nevertheless argues that we should construe this broad grant of authority to exclude the power to agree to arbitration because the power of attorney only grants the attorney-in-fact the power to act in matters concerning Ms. Hicks’ “property rights,” not her “personal constitutional rights.” The estate relies on the language in the Notice paragraph preceding the designation of the attorney-in-fact, which states the following:
 

 NOTICE: THIS IS AN IMPORTANT DOCUMENT. BEFORE SIGNING THIS DOCUMENT, YOU SHOULD KNOW THESE IMPORTANT FACTS. THE PURPOSE OF THIS POWER OF ATTORNEY IS TO GIVE THE PERSON WHOM YOU DESIGNATE (YOUR “AGENT”) BROAD POWERS TO HANDLE YOUR PROPERTY, WHICH MAY INCLUDE POWERS TO PLEDGE, SELL OR OTHERWISE DISPOSE OF ANY REAL OR PERSONAL PROPERTY WITHOUT ADVANCE NOTICE TO YOU OR APPROVAL BY YOU. THESE POWERS WILL CONTINUE TO EXIST EVEN AFTER YOU BECOME DISABLED OR INCOMPETENT. THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL OR
 
 *583
 
 OTHER HEALTH CARE DECISIONS FOR YOU. IF THERE IS ANYTHING ABOUT THIS FORM THAT YOU DO NOT UNDERSTAND, YOU SHOULD ASK A LAWYER TO EXPLAIN IT TO YOU. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.
 

 The estate’s argument evinces a fundamental misunderstanding of what constitutes property, and it overlooks the fact that the language used in this power of attorney is widely used and commonly understood to include the power to submit to arbitration.
 

 The estate’s argument that the power of attorney was intended to provide the attorney-in-fact with authority only with respect to Ms. Hicks’ property rights is unavailing because her estate’s claim against the nursing home
 
 is
 
 property.
 
 See Mullane v. Cent. Hanover Bank & Trust Co.,
 
 339 U.S. 306, 313-14, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (noting that a cause of action is a species of property protected by the due process clause of the Fourteenth Amendment).
 

 One form of intangible property is a
 
 cause of action.
 
 This is a right grounded in tort, property or contract law to recover a judgment for money or property from another person whose conduct or activity is deemed by applicable law to have caused the claimant to suffer damage or a loss.
 

 Williams v. Am. Optical Corp.,
 
 985 So.2d 23, 26 (Fla. 4th DCA 2008),
 
 review granted, Am. Optical Corp. v. Spiewak,
 
 12 So.3d 220 (Fla.2009). Access to the courts — that is, the right to redress grievances — -is a protected property right.
 
 Logan v. Zimmerman Brush Co.,
 
 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (holding that a state created statutory claim is a constitutionally protected property interest);
 
 Sunspan Eng’g & Const. Co. v. Spring-Lock Scaffolding Co.,
 
 310 So.2d 4, 8 (Fla.1975) (“[A] vested cause of action, or ‘chose in action’ is personal property entitled to protection from arbitrary laws.”);
 
 see also McCuiston v. Wanicka,
 
 483 So.2d 489, 491 (Fla. 2d DCA 1986) (holding that a statute delaying prisoners from bringing civil actions until they were released from custody “unreasonably deprived prisoners of a protected property right, namely, a chose in action”). Finally, section 709.08(6), Florida Statutes (2007), specifically identifies a “chose in action” as property to which a durable power of attorney may apply.
 

 Additionally, while Florida does not have a statutory form power of attorney, many states do.
 
 [2]
 
 The form Ms. Hicks used in this case is typical of forms used throughout the country. These forms are derivations of the statutory form contained in Article 3 of the Uniform Power of Attorney Act.
 
 [3]
 

 See, e.g.,
 
 Alaska Stat. § 13.26.332 (2009), Cal. Prob.Code § 4401 (2009).
 
 Compare
 
 Unif. Power of Attorney Act § 301, 8B U.L.A. 79 (Supp.2009). As does the form used by Ms. Hicks, these statutory forms list the powers that may be conferred on the attorney-in-fact, including the power to act with respect to “claims and litigation.” Without exception, these statutes provide that this language empowers the attorney-in-fact to submit to arbitration or “alternative dispute resolu
 
 *584
 
 tion.”
 
 [4]
 
 Additionally, Article 2 of the Uniform Power of Attorney Act lists “claims and litigation” among the subjects over which authority can be conferred, and it provides a detailed description of the authority conferred which includes, among other things, the authority to “submit to alternative dispute resolution, settle, and propose or accept a compromise.” Unif. Power of Attorney Act § 212, 8B U.L.A. (Supp.2009) at 72.
 

 When called upon to interpret a power of attorney that is modeled on a widely used statutory form, it seems prudent to consider the commonly understood meaning of the terms used in the form because to do otherwise risks thwarting the principal’s intent. As evidenced by the various states’ statutes, the power to act with respect to “claims and litigation” is commonly understood to include the power to submit to arbitration. This fact reinforces our conclusion that Ms. Hicks’ power of attorney conferred that power on her attorney-in-fact.
 

 Here, the language of the power of attorney unambiguously confers on the attorney-in-fact the general power to act in any way Ms. Hicks could act with respect to claims and litigation. That general power includes the power to agree to submit to arbitration. Accordingly, we reverse and remand for further proceedings consistent with this opinion.
 

 Reversed and remanded.
 

 WHATLEY and DAVIS, JJ., Concur.
 

 [1]
 

 . The power of attorney form Ms. Hicks executed stated the following:
 

 My attorney-in-fact shall act in my name, place and stead in any way which I myself could do, if I were personally present, with respect to the following matters, to the extent diat I am permitted by law to act through an agent:
 

 [[Image here]]
 

 [initialed] (A) Real estate transactions
 

 [initialed] (B) Tangible personal property transactions
 

 [initialed] (C) Bond, share and commodity transactions
 

 [initialed] (D) Banking transactions
 

 [initialed] (E) Business operating transactions
 

 [initialed] (F) Insurance transactions
 

 (G) Gifts to charities and individuals
 

 [[Image here]]
 

 [initialed] (H) Claims and litigation
 

 [initialed] (I) Personal relationships and affairs
 

 CD Benefits from military service
 

 [initialed] (K) Records, reports and statements
 

 [initialed] (L) Full and unqualified authority to my attorney-in-fact to delegate any or all of the foregoing powers to any person or persons whom my attorney-in-fact shall select
 

 (M) Access to safe deposit box(es)
 

 [initialed] (N) All other matters
 

 [initialed] (0) Durable Provision: This durable Power of Attorney shall not be affected by my subsequent disability or incompetence.
 

 [2]
 

 . The Uniform Power of Attorney Act indicates that currently eighteen states have statutory forms. Unif. Power of Attorney Act, Art. 3, General Comment, 8B U.L.A. 79 (Supp. 2009).
 

 [3]
 

 . Article 3 of the Uniform Power of Attorney Act replaces the Uniform Statutory Form Power of Attorney Act. Unif. Power of Attorney Act, Art. 1, General Comment, 8B U.L.A. 34 (Supp.2009).
 

 [4]
 

 .
 
 See, e.g.,
 
 Ark.Code Ann. § 28-68-412 (2009); Cal. Prob.Code § 4459 (2009); Colo. Rev.Stat. § 15-14-735 (2009); Idaho Code Ann. § 15-12-212 (2009); Mont.Code Ann. § 72-31-232 (2009); N.M. Stat. § 46B-1-212 (2009); Okla. Stat. tit. 15, § 1014 (2009).