PER CURIAM.
 

 The Estate of Ellen Smith (“the estate”) appeals a non-final order compelling arbi
 
 *104
 
 tration of its claims against Southland Group and the other appellees for nursing home abuse associated with Smith’s death. This Court has jurisdiction under Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iv). The estate argues that the durable power of attorney (“DPOA”) Smith’s daughter acted under in executing Smith’s nursing home admission contract did not authorize her to consent to arbitrate claims arising from Smith’s nursing home care. We disagree, and affirm.
 

 The DPOA in this case did not specifically reference arbitration agreements, but gave Smith’s daughter broad authority to effectuate Smith’s legal rights. The language of the DPOA is clearly broad enough to encompass arbitration and to authorize Smith’s daughter to enter a binding arbitration agreement on her mother’s behalf. The document granted Smith’s daughter the power
 

 “generally to do and perform
 
 all matters and things,
 
 transact all business, make,
 
 execute,
 
 and acknowledge
 
 all contracts, whether involving real property or not,
 
 orders, deeds, writings, assurances, and instruments
 
 which may he requisite or proper to effectuate any matter or thing appertaining to or belonging to me,
 
 and generally to act for me in all matters affecting my business or property....”
 

 (Emphasis added). Under applicable statutes and cases, this provision included the power to consent to arbitration.
 
 See
 
 § 709.08(6), Fla. Stat. (2008) (providing that “[ujnless otherwise stated in the durable power of attorney, the durable power of attorney applies to any interest in property owned by the principal, including ... all other contractual or statutory rights or elections”);
 
 Jaylene, Inc. v. Steuer ex rel. Paradise,
 
 22 So.3d 711 (Fla. 2d DCA 2009) (concluding that a DPOA was “sufficiently broad” to confer authority on attorney-in-fact to bind principal to arbitration provision in nursing home admissions contract);
 
 Sovereign Healthcare of Tampa, LLC v. Estate of Huerta ex rel. Huerta,
 
 14 So.3d 1033 (Fla. 2d DCA 2009) (same);
 
 Five Points Health Care, Ltd. v. Mallory,
 
 998 So.2d 1180 (Fla. 1st DCA 2008) (same);
 
 Jaylene, Inc. v. Moots,
 
 995 So.2d 566, 570 (Fla. 2d DCA 2008),
 
 rev. denied,
 
 995 So.2d 566 (Fla. 2d DCA 2008) (holding that a “broad, general grant of authority” in a power of attorney authorized the attorney-in-fact to consent to arbitration on behalf of the principal);
 
 Schriver v. Schriver,
 
 441 So.2d 1105, 1106-07 (Fla. 5th DCA 1983) (interpreting a DPOA authorizing the donor’s daughter to “execut(e) ... any instrument which may be requisite ... to effectuate any ... thing pertaining ... to me” as “obviously meant to be all-inclusive to allow the donee to do any legal act the donor could do on her own,” including “signing documents which secure and protect any legal interest of the donor”);
 
 see also Alterra Healthcare Corp. v. Bryant,
 
 937 So.2d 263, 269 (Fla. 4th DCA 2006) (citing approvingly to
 
 Schriver
 
 in holding that a similarly broad grant of authority included the power to consent to arbitration);
 
 but cf. McKibbin v. Alterra Health Care Corp. (In re Estate of McKibbin),
 
 977 So.2d 612 (Fla. 2d DCA 2008).
 
 [1]
 

 AFFIRMED.
 

 MONACO, C.J., and LAWSON and JACOBUS, JJ., concur.
 

 [1]
 

 . In
 
 McKibbin,
 
 the Second District held that an estate was not bound by an arbitration agreement signed by the decedent’s attorney-in-fact because ”[n]othing in that power of
 
 *105
 
 attorney ... gave ... [the attomey-in-fact] legal authority to enter into an arbitration agreement on behalf of [the principal]." Appellants read
 
 McKibbin
 
 as holding that an attomey-in-fact is not authorized to execute an arbitration agreement on behalf of the principal unless the agreement expressly lists arbitration as a type of agreement within the attorney-in-fact’s authority to enter for the principal. However, less than a year after
 
 McKibbin
 
 was decided, the Second District held in
 
 Moots
 
 that
 
 McKibbin
 
 was "not controlling” because it did not recite language of the DPOA in that case for comparison to other cases. Consistent with our holding in this case,
 
 Moots
 
 held that a broad, general grant of authority in a DPOA was sufficient to encompass arbitration.
 
 Moots,
 
 995 So.2d at 570. Additionally, the
 
 McKibbin
 
 DPOA was included in the record below and in this appeal. A review of it makes clear the basis for the court's reasoning and its distinction from the instant DPOA. The document at issue in
 
 McKibbin
 
 began by granting the attomey-in-fact specific powers related to the donor's real estate, tangible personal property, intangible personal property, income taxes, and tmst. Then it granted the power to "do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises.” Black’s Law Dictionary defines the term "premises” as "[t]hat which is put before, that which precedes, the forgoing statements.”
 
 Black’s Law Dictionary,
 
 1180 (6th ed. 1990). Thus, the seemingly broad grant of authority in the
 
 McKibbin
 
 DPOA was limited to the areas that preceded it. The
 
 McKibbin
 
 DPOA also contained an "Appointment of Health Care Surrogate” clause, which granted authority to "authorize my admission to ... a health care facility” and "provide ... consent on my behalf." These powers took effect only in the event that the donor was "determined to be incapacitated.” In contrast, the instant DPOA contains no similar limiting phrases and applies regardless of capacity. This would explain why the court in
 
 McKibbin
 
 focused on the lack of evidence of incapacity, which is not relevant in this case.