LaROSE, Judge.
 

 The Estate of Nettie Irons appeals a nonfinal order compelling arbitration of claims under the wrongful death and nursing home statutes against Arcadia Healthcare, L.C.
 
 See
 
 §§ 400.023, 768.21, Fla. Stat. (2009). We have jurisdiction.
 
 See
 
 Fla. R. App. P. 9.130(a)(3)(C)(iv). The Estate argues that Mrs. Irons’ power of attorney did not authorize her surrogate to consent to arbitration. We agree and reverse.
 

 Mrs. Irons resided for about a month at Dove Healthcare, an Arcadia skilled nursing and rehabilitation facility. Within days of her discharge, she died. Prior to her admission to Dove, Mrs. Irons executed a Health Care Power of Attorney (POA) appointing her daughter, June Springer, as her “health care surrogate” and permitting Mrs. Springer “to make all health care decisions for [Mrs. Irons].”
 

 Following Mrs. Irons’ death, the Estate filed suit. Arcadia moved to compel arbitration. The admission agreement that Mrs. Springer signed pursuant to the POA contained an arbitration provision. The Estate objected, arguing that Mrs. Springer lacked authority to consent to arbitration. The trial court granted the motion. It concluded that the POA was a durable power of attorney giving Mrs. Springer authority to act for her mother regarding anything concerning her health, including contracting for nursing home care.
 

 The POA was titled “Health Care Power of Attorney.” It provided, in pertinent part, as follows:
 

 This Power is a Durable Power of Attorney that is effective upon signing and until it is revoked in writing, it is to be honored regardless of whether I can make my own health care decisions or provide informed consent. This Power revokes any prior health care surrogate designation that I may have made and permits my Surrogate to make all health care decisions for me.
 

 All third parties, including insurance companies, physicians, pharmacists, health care facilities, clinics, hospitals and all other providers of my medical care shall comply with my Surrogate’s request for information and accept any documents (including releases) my Surrogate signs for me. Without limiting the rights and authority of my Surrogate to act for me, my Surrogate may, among other acts and decisions:
 

 1. Consult with health care providers and sign informed consent forms in my best interests as my Surrogate perceives same and authorize my admission to or transfer from a health care facility;
 

 2. Apply for all public benefits, including Medicare and Medicaid, and to have access to my personal financial information to the extent required to make application;
 

 
 *398
 
 3. Have access to any and all medical records, medical history, billing, and any other information related to my medical care and shall execute releases of any such confidential information in my place and stead[;]
 

 4. Withhold or withdraw, by court order if necessary, life-prolonging or death-delaying procedures in accordance with my Living Will Declaration, or other writing, which I may presently have or which I will make in the future.
 

 Mrs. Irons, however, remained liable for signing admission or treatment papers for her care:
 

 I alone, and not my Surrogate, shall be liable for signing admission or treatment papers for my health care, as I alone shall be responsible for such costs. This Power [of Attorney] is not given as a condition of treatment by or admission to a health care facility.
 

 The narrow issue before us concerns the scope of the POA. The interpretation of a power of attorney is a question of law which we review de novo.
 
 Candansk, LLC v. Estate of Hicks,
 
 25 So.3d 580, 582 (Fla. 2d DCA 2009);
 
 Jaylene, Inc. v. Moots,
 
 995 So.2d 566, 568 (Fla. 2d DCA 2008).
 

 “Powers of attorney are strictly construed. They will be held to grant only those powers that are specified and will be closely examined in order to ascertain the intent of the principal.”
 
 Kotsch v. Kotsch,
 
 608 So.2d 879, 880 (Fla. 2d DCA 1992) (holding power of attorney specifically granting authority to son to provide for father’s lifetime maintenance and care did not authorize son to transfer father’s assets into trust to protect them from father’s wife) (citing
 
 Falls at Naples, Ltd. v. Barnett Bank of Naples, N.A.,
 
 603 So.2d 100 (Fla. 2d DCA 1992) (Altenbernd, J., concurring));
 
 see Carrington Place of St. Pete, LLC v. Estate of Milo ex rel. Brito,
 
 19 So.3d 340, 341-42 (Fla. 2d DCA 2009) (holding power of attorney granting agent authority to manage principal’s property interests did not confer on the agent power to enter into arbitration agreements). A power of attorney “need not expressly refer to arbitration to confer the authority to agree to this method of dispute resolution.”
 
 Candansk,
 
 25 So.3d at 582 (citing
 
 Jaylene,
 
 995 So.2d at 569). For example, in
 
 Jaylene,
 
 we reversed an order denying a nursing home’s motion to compel arbitration. 995 So.2d 566. We concluded that the power of attorney, which granted the agent “full power and authority” to “manage and conduct all of [the principal’s] affairs and to exercise all of [her] legal rights and powers, including all rights and powers that [she] may acquire in the future,” encompassed the authority to consent to arbitration.
 
 Id.
 
 at 568;
 
 see also Estate of Smith v. Southland Suites of Ormond Beach, LLC,
 
 28 So.3d 103, 104 (Fla. 5th DCA 2010) (holding power of attorney’s broad authority for attorney in fact to effectuate principal’s legal rights authorized consent to binding arbitration agreement where arbitration not mentioned specifically).
 

 Arcadia stresses that Mrs. Irons executed a “durable power of attorney.”
 
 See
 
 § 709.08(7)(a), Fla. Stat. (2009) (“Except as otherwise limited by this section, by other applicable law, or by the durable power of attorney, the attorney in fact has full authority to perform, without prior court approval, every act authorized and specifically enumerated in the durable power of attorney.”).
 
 [1]
 
 Thus, according to
 
 *399
 
 Arcadia, the POA grants Mrs. Springer broad power that necessarily includes the authority to bind Mrs. Irons (or her Estate) to arbitration. But section 709.08(6) provides that “[u]nless otherwise stated in the durable power of attorney, the durable power of attorney applies to any interest in property owned by the principal, including, without limitation, ... contractual or statutory rights or elections....” The qualifying phrase, “[ujnless otherwise stated,” reminds us of our obligation to construe strictly the language of the POA.
 
 See also
 
 § 709.08(7)(a). “Where nothing in a [power of attorney] gives an attorney-in-fact legal authority to enter into an arbitration agreement on a person’s behalf, a trial court is incorrect to grant a nursing home’s motion to compel arbitration based on an admission agreement entered into by the attorney-in-fact.”
 
 Carrington,
 
 19 So.3d at 341.
 

 Sovereign Healthcare of Tampa, LLC v. Estate of Huerta,
 
 14 So.3d 1033 (Fla. 2d DCA 2009), articulated our two-prong analysis of a power of attorney. A power of attorney may contain a “catchall” statement describing broadly the authority granted to the attorney in fact, it may grant specific powers, or it may do both. If the power of attorney includes both, the nature of listed specific powers may clarify whether the broader catch-all provision includes a particular, but not specifically mentioned, power.
 
 See id.
 
 at 1034-35. In
 
 Sovereign Healthcare,
 
 we concluded that two specific grants of authority — to consent to hospitalization and “to sign any and all releases or consent required” for such hospitalization — were similar enough to the power to agree to an arbitration clause in a nursing home admission agreement.
 
 Id.
 
 at 1035;
 
 see also Candansk,
 
 25 So.3d at 582 (holding power of attorney’s specific grant of power to act with respect to claims and litigation supported conclusion that broad power to “act in [the principal’s] name, place and stead
 
 in any way which [she herself! could do,
 
 if [she] were personally present” was broad enough to authorize consent to nursing home’s binding arbitration provision in admissions agreement);
 
 Carrington Place,
 
 19 So.3d at 341 (holding power of attorney that did not make broad, general grant of authority and specifically granted authority related solely to property interests did not confer authority to consent to arbitration clause in nursing home admission agreement) (citing
 
 Estate of McKibbin v. Alterra Health Care Corp.,
 
 977 So.2d 612 (Fla. 2d DCA 2008));
 
 Jaylene,
 
 995 So.2d at 568-69 (explaining that similarity of specifically listed powers — to enter into binding contracts and to settle the principal’s claims — to the power to agree to arbitrate supported the conclusion that power of attorney’s umbrella grant of “full power and authority to act on [the principal’s] behalf’ was broad enough to include it);
 
 *400
 

 Five Points Health Care, Ltd. v. Mallory,
 
 998 So.2d 1180, 1181 (Fla. 1st DCA 2008) (holding power of attorney’s specific grant of power to “[p]rosecute, defend and settle all actions” consistent with conclusion that broad grant of authority to “[d]o anything regarding [her] estate, property and affairs that [she] could do for [herself]” included power to consent to arbitration).
 

 Mrs. Irons’ POA is not so broad. The broadest description of the granted authority is the statement that it lists specific powers “[w]ithout limiting the rights and authority of [her] Surrogate to act for [her].” The specifically listed powers, however, relate to the direct provision of medical care. The POA is called a “Health Care Power of Attorney” and identifies Mrs. Springer as a “health care surrogate,” suggesting a limited role for Mrs. Springer. See § 765.205, Fla. Stat. (2009) (defining responsibilities of a health care surrogate).
 
 [2]
 
 The third parties it directs to accept the surrogate’s actions on Mrs. Iron’s behalf are all related to the provision of health care: “insurance companies, physicians, pharmacists, health care facilities, clinic, hospitals, and all other providers of my medical care.... ” The POA “is to be honored regardless of whether [Mrs. Irons] can make [her] own health care decisions or provide informed consent.” We can say that the POA authorized Mrs. Springer to make health care decisions for her mother. The language of the POA, however, supports no conclusion that Mrs. Irons intended to authorize her daughter to act for her in matters related to her property rights or potential litigation with health care providers. Particularly persuasive is the fact that the POA contains language strikingly similar to that used in the health care surrogate statute.
 
 See
 
 section 765.205.
 

 The POA cabins Mrs. Springer’s authority. We would strain her mother’s intent to conclude that the POA authorized Mrs. Springer to bind Mrs. Irons to arbitration.
 
 Cf. Stalley v. Transitional Hosps. Corp. of Tampa, Inc.,
 
 44 So.3d 627, 630 (Fla. 2d DCA 2010) (holding wife’s authority to sign admission agreements and consents for medical treatment on husband’s behalf did not authorize consent to arbitration because arbitration agreement was not necessary for or related to his treatment);
 
 Blankfeld v. Richmond Health Care, Inc.,
 
 902 So.2d 296, 300-01 (Fla. 4th DCA 2005) (holding consent to arbitration in nursing home admission agreement signed by patient’s son was not strictly related to health care decisions).
 

 We are compelled to reverse the nonfi-nal order on review and remand to the trial court with directions to enter an order denying the motion to compel arbitration.
 

 Reversed and remanded with directions.
 

 SILBERMAN, C.J., and CRENSHAW, J., Concur.
 

 [1]
 

 . A durable power of attorney is a written power of attorney by which a principal designates another as the principal’s attorney in fact. The durable power of attorney must be
 
 *399
 
 in writing, must be executed with the same formalities required for the conveyance of real property by Florida law, and must contain the words: "This durable power of attorney is not affected by subsequent incapacity of the principal except as provided in s. 709.08, Florida Statutes”; or similar words that show the principal’s intent that the authority conferred is exercisable notwithstanding the principal’s subsequent incapacity, except as otherwise provided by this section.
 

 § 709.08(1);
 
 see also Black’s Law Dictionary
 
 1210 (8th ed. 1990) (stating that a durable power of attorney is "A power of attorney that remains in effective during the grantor's incompetency”). The POA here is "effective upon signing” and directs that "it is to.be honored regardless of whether [Mrs. Irons] can make [her] own health care decisions or provide informed consent.” Mrs. Irons' surrogate "must diligently attempt to notify [Mrs. Irons’] spouse and any adult children upon [her] incapacity and before exercising this Power [of attorney].”
 

 [2]
 

 . Section 765.205 provides that (1) a health care surrogate's responsibilities (powers) are to (a) act for the principal to make all health care decisions (only) during the principal's incapacity, (b) consult with providers to (c) give informed written consent for health care, (d) be provided access to medical records, (e) apply for public benefits and have access to the principal’s necessary financial records; and (2) a surrogate may authorize release of information to ensure continuity of health care and may authorize the principal's admission, discharge or transfer to or from a chapter 400 health care or other facility or program.