*629
 
 VILLANTI, Judge.
 

 Douglas B. Stalley, as Personal Representative of the Estate of Roderic L’Aine, Deceased (the Estate), appeals the trial court’s order that stayed its lawsuit for wrongful death and negligence and compelled arbitration of its dispute with Transitional Hospitals Corporation of Tampa, Inc., Kindred Healthcare Operating, Inc., and Kindred Healthcare, Inc. (collectively Kindred). The Estate contends that the court erred by finding that Roderic L’Aine’s wife, JoAnne,
 
 [1]
 
 had the authority to bind him to an arbitration agreement, thereby waiving his right to a jury trial. We agree and reverse.
 

 Roderic was admitted to one of Kindred’s hospitals late in the afternoon of July 20, 2006. While this was a non-emergency admission, Roderic was transported to Kindred by ambulance. JoAnne arrived slightly before Roderic, and she met with a Kindred admission clerk. During her meeting with the clerk, JoAnne signed what she believed to be “just normal paperwork that you have to fill out whenever a loved one goes into the hospital.” JoAnne testified at deposition that she did not read the paperwork at the time, in part because she wanted to get Roderic settled into his room and in part because the admission clerk was in a hurry to leave by 5 p.m. When JoAnne signed this paperwork, she did not have a power of attorney to act for Roderic. And despite the fact that Roderic was conscious, alert, and able to speak, no one from Kindred ever asked Roderic whether JoAnne was authorized to sign on his behalf or whether he was able to sign his own admissions paperwork.
 

 Roderic was a patient at Kindred from July 20, 2006, until November 28, 2006, when he was transferred to St. Joseph’s Hospital. Roderic subsequently returned to Kindred on December 13, 2006, where he remained until his death on January 17, 2007. After Roderic’s death, the Estate sued Kindred based on allegations that its employees had negligently treated Roderic during both of his stays. The complaint alleged that this negligent treatment caused Roderic pain and suffering before his death and that the negligent treatment ultimately resulted in Roderic’s death.
 

 In response to the suit, Kindred filed a motion to dismiss asserting that JoAnne had signed an arbitration agreement on behalf of Roderic when he was first admitted to Kindred’s hospital in July 2006. Kindred argued that the Estate’s complaint should be dismissed in favor of arbitration to the extent that it sought damages based on events occurring during Roderie’s first admission.
 
 [2]
 
 In opposition to this motion, the Estate asserted that the arbitration agreement was unenforceable because JoAnne did not have the authority to sign such an agreement on Ro-deric’s behalf. After a lengthy hearing, the trial court found that JoAnne, as Roderic’s spouse, had the authority to sign the arbitration agreement and bind Roderic to it. Based on this finding, the trial court stayed the litigation and compelled arbitration as to the claims arising out of Ro-deric’s first admission to Kindred. The Estate seeks review of this ruling.
 

 As a general rule, only the actual parties to the arbitration agreement can be compelled to arbitrate.
 
 See Alterra Healthcare Corp. v. Estate of Linton ex rel. Graham,
 
 953 So.2d 574, 579 (Fla. 1st DCA 2007);
 
 Extendicare Health Servs.,
 
 
 *630
 

 Inc. v. Estate of Patterson,
 
 898 So.2d 989, 991 (Fla. 5th DCA 2005);
 
 Regency Island, Dunes, Inc. v. Foley & Assocs. Constr. Co.,
 
 697 So.2d 217, 218 (Fla. 4th DCA 1997). However, an exception to this general rule exists when the signatory of the arbitration agreement is authorized to act as the agent of the person sought to be bound, and “[n]on-signatories may be bound by an arbitration agreement if dictated by ordinary principles of contract law and agency.”
 
 Martha A. Gottfried, Inc. v. Paulette Koch Real Estate, Inc.,
 
 778 So.2d 1089, 1090 (Fla. 4th DCA 2001).
 

 An agency relationship can arise by written consent, oral consent, or by implication from the conduct of the parties.
 
 See Thomkin Corp. v. Miller,
 
 156 Fla. 388, 24 So.2d 48, 49 (1945). An agency by implication, or apparent agency, arises only when there has been (1) a representation by the principal that the actor is his or her agent, (2) reliance on that representation by a third party, and (3) a change in position by the third party in reliance on that representation.
 
 See Mobil Oil Corp. v. Bransford,
 
 648 So.2d 119, 121 (Fla.1995). As to the first element, when there has been no representation of authority
 
 by the principal,
 
 no apparent or implied agency arises.
 
 See Smith v. Am. Auto. Ins. Co.,
 
 498 So.2d 448, 449 (Fla. 3d DCA 1986). The acts of the agent, standing alone, are insufficient to establish that the agent is authorized to act for the principal.
 
 See Owen Indus., Inc. v. Taylor,
 
 354 So.2d 1259, 1262 (Fla. 2d DCA 1978);
 
 Taco Bell of Cal. v. Zappone,
 
 324 So.2d 121, 124 (Fla. 2d DCA 1975);
 
 Smith,
 
 498 So.2d at 449. Moreover, the scope of the agent’s authority is limited to what the principal has authorized the agent to do.
 
 See Poe & Assocs., Inc. v. Estate of Vogler,
 
 559 So.2d 1235, 1236 (Fla. 3d DCA 1990).
 

 In this case, there is no dispute that Roderic did not sign the arbitration agreement himself. In addition, there is no dispute that JoAnne did not have a power of attorney or other written consent authorizing her to act as Roderic’s agent when she signed the arbitration agreement. Therefore, the question before the trial court was whether Kindred presented sufficient evidence to establish that JoAnne was acting as Roderic’s apparent agent when she signed the arbitration agreement so as to bind him to the agreement. Kindred did not do so.
 

 The only evidence before the trial court concerning Roderic’s intent was JoAnne’s testimony that she had Roderic’s authority to sign “papers regarding his admission.” In this capacity, JoAnne was authorized to sign the admissions agreement and the various consents for medical treatment necessary for his care and treatment. However, the arbitration agreement in this case is not a document necessary for Roderic’s care and treatment. Because the arbitration agreement at issue here was an optional agreement, it was not
 
 necessary
 
 for JoAnne to sign this agreement so that Roderic would receive care. Further, the arbitration agreement is not related to Roderic’s medical treatment or the provision of health care services to him. Accordingly, JoAnne’s testimony that Roderic authorized her to sign the hospital admissions paperwork does not, by itself, establish that she was authorized to sign an arbitration agreement that waived some of Roderic’s constitutional rights. To the extent that JoAnne acted outside the scope of her express authority in signing this agreement, Roderic cannot be bound by it.
 

 As it did in the trial court, Kindred argues in this appeal that JoAnne was Roderic’s “apparent agent” when she signed the admissions paperwork and therefore Kindred was entitled to rely on JoAnne’s representations concerning her
 
 *631
 
 authority to sign the admissions paperwork, including the arbitration agreement. However, the evidence presented by Kindred did not establish one of the required elements for proving an apparent agency, i.e., a representation by Roderic that JoAnne was his agent.
 

 Kindred concedes that Roderic made no express representations concerning JoAnne’s authority. Instead, Kindred points to Roderic’s failure to question JoAnne about the documents, his failure to ask Kindred to see the documents, and his failure to tell Kindred that JoAnne was not authorized to act for him. Kindred contends that these failures on Roderic’s part functioned as a representation by him that JoAnne had the authority to sign the arbitration agreement as his agent.
 

 The problem with this argument is that it assumes that Roderic knew that JoAnne intended to sign and did sign a document agreeing to arbitration. The facts here showed that Roderic authorized JoAnne to sign the paperwork necessary for his admission to the Kindred facility. There is nothing in the record to show that anyone told Roderic that JoAnne would be asked to sign a document agreeing to arbitrate or that by agreeing to arbitrate he would be giving up his constitutional right to a jury trial. Instead, for all Roderic knew, the documents JoAnne signed were those providing for his care, verifying his personal information, verifying his insurance coverage, and ordering his meals, i.e., the “normal paperwork” attendant to a hospital admission. In the absence of some evidence that Roderic knew that JoAnne would be asked to waive his constitutional rights, Roderic’s failure to ask to review the documents cannot constitute a representation that JoAnne was authorized to act as his agent in waiving his right to a jury trial. Thus, since Kindred failed to present any evidence of such a representation by Roderic concerning JoAnne’s authority, it did not establish a necessary element of the formation of an apparent agency, and it cannot bind Roderic to the arbitration agreement he did not sign.
 

 This same lack of evidence is fatal to Kindred’s alternative argument that Roderic ratified the arbitration agreement that JoAnne signed. Ratification of an agent’s prior unauthorized actions occurs when the principal is
 
 fully informed
 
 of the agent’s act and
 
 affirmatively
 
 manifests an intent to approve that act.
 
 See, e.g., Frankenmuth Mut. Ins. Co. v. Magaha,
 
 769 So.2d 1012, 1021 (Fla.2000) (quoting
 
 Ball v. Yates,
 
 158 Fla. 521, 29 So.2d 729, 732 (1946));
 
 G & M Rests. Corp. v. Tropical Mitsic Serv., Inc.,
 
 161 So.2d 556, 557-58 (Fla. 2d DCA 1964);
 
 Deutsche Credit Corp. v. Peninger,
 
 603 So.2d 57, 58 (Fla. 5th DCA 1992). While ratification need not be expressed in words, there must be some intelligent act or conduct of the principal, “made with a full knowledge of the facts, which clearly shows an intention to be bound.”
 
 Perper v. Edell,
 
 160 Fla. 477, 35 So.2d 387, 390 (1948). Thus, like waiver, ratification cannot be presumed simply by the principal’s lack of action.
 

 Here, the evidence presented by Kindred did not establish that Roderic was ever informed — much less
 
 fully
 
 informed — of the arbitration agreement signed by JoAnne. Further, Kindred failed to establish any “intelligent act or conduct” by Roderic that would show his intention to be bound by the arbitration agreement. In the absence of such evidence, Kindred cannot show that Roderic ratified the arbitration agreement signed by JoAnne so as to bind the Estate to it.
 

 The trial court’s decision to the contrary appears to have been based, perhaps understandably, on the practicalities of the L’Aines’ situation rather than the law. The trial court rejected the Estate’s argument that some evidence of agency was
 
 *632
 
 required and seemed to conclude that one spouse is always the agent of the other as a matter of law.
 
 [3]
 
 However, neither Kindred nor the trial court cited any authority for this broad proposition, and, in fact, the law is to the contrary.
 
 See, e.g., Klepper v. Breslin,
 
 83 So.2d 587, 595 (Fla.1955) (holding that the negligence of one spouse could not be imputed to the other unless he or she was acting as the agent of the other in the matter at hand);
 
 Blunt v. Tripp Scott, P.A.,
 
 962 So.2d 987 (Fla. 4th DCA 2007) (holding that a husband could not settle his wife’s claim with law firm as her agent absent evidence that the wife had represented to the law firm that her husband had authority to bind her in settlement negotiations);
 
 Schmidt v. Matilsky,
 
 490 So.2d 237 (Fla. 1st DCA 1986) (holding that one spouse cannot transfer property held by spouses as tenants by the entire-ties without evidence that that spouse is acting as the duly appointed agent of the other spouse);
 
 Douglass v. Jones,
 
 422 So.2d 352 (Fla. 5th DCA 1982) (holding that where spouses owned property as tenants by the entireties and only one spouse signed lease renewal and option to buy agreement with tenants, the agreement was not valid and binding on the non-signing spouse absent evidence that the non-signing spouse had appointed the signing spouse as an agent for that transaction);
 
 Benson v. Atwood,
 
 177 So.2d 380 (Fla. 1st DCA 1965) (finding that while the evidence was undisputed that husband had appointed the wife as his agent for purposes of procuring automobile insurance, questions of fact existed as to whether she had been appointed as his agent for purposes of canceling the insurance, thus pre-eluding summary judgment). Since there is no authority supporting a finding that JoAnne was Roderic’s agent simply by virtue of her position as his spouse, the lack of any evidence that she was his actual or apparent agent means that the arbitration agreement is not binding on Roderic or the Estate.
 

 As an additional alternative basis for affirmance, Kindred argues that the Estate is bound by the arbitration agreement under a theory of estoppel because Roderic accepted the benefits of his admission. It is true that an individual who makes use of a contract as long as it works to his or her advantage is estopped from avoiding the contract’s provisions concerning the forum in which any dispute should be resolved.
 
 See Martha A. Gottfried, Inc.,
 
 778 So.2d at 1090 (holding that a party who takes advantage of the provisions of a contract containing an arbitration clause cannot then argue that he or she is not bound by the arbitration provisions should a dispute arise). Here, however, the Estate is not trying to take advantage of certain provisions of a contract while avoiding the application of other provisions of the same contract. Roderic utilized the health care services provided by Kindred under the admissions agreement. That agreement was a separate document from the optional arbitration agreement at issue here. Neither Roderic nor his Estate ever sought to make use of the arbitration agreement, and therefore the Estate is not estopped from asserting that it is unenforceable.
 

 Kindred also contends that Ro-deric was a third-party beneficiary of the
 
 *633
 
 arbitration agreement and thus should be bound by it, relying on
 
 Linton.
 
 However, the fact that the arbitration agreement is a separate
 
 optional
 
 agreement makes Kindred’s third-party beneficiary argument and its reliance on
 
 Linton
 
 misplaced. In
 
 Linton,
 
 the court held that a nursing home resident was bound by an arbitration provision contained in her residency agreement because she had accepted the benefits of the residency and the services provided and so was the intended third-party beneficiary of that entire agreement. 953 So.2d at 579. Here, however, the admissions agreement does not contain an arbitration provision nor does the admissions agreement reference the separate arbitration agreement. Further, Kindred’s provision of services to Roderic was not dependent on his acceptance of the arbitration agreement. Therefore, Kindred cannot establish that Roderic was the intended third-party beneficiary of the arbitration agreement such that he would be bound by it.
 

 In conclusion, because Kindred failed to present sufficient evidence to establish that JoAnne was acting as Roderic’s agent when she signed the arbitration agreement or that Roderic was the intended third-party beneficiary of that agreement, the trial court erred by finding the arbitration agreement enforceable and requiring the Estate to arbitrate its claims. Therefore, we reverse the order granting the stay of litigation and referring portions of the case to arbitration.
 

 Reversed and remanded for further proceedings in accordance with this opinion.
 

 SILBERMAN and LaROSE, JJ., Concur.
 

 [1]
 

 . We will use the first names of the L’Aines in this opinion to clearly distinguish between the two. We intend no disrespect to the parties.
 

 [2]
 

 .
 
 JoAnne did not sign an arbitration agreement when Roderic was readmitted to Kindred in December 2006.
 

 [3]
 

 . To the extent that the trial court's belief concerning the "agency” between a husband and wife was predicated on the common law doctrine of necessaries, under which a husband was liable to third-party creditors for any "necessaries” they provided to his wife, we note that this doctrine has been abolished in Florida.
 
 Connor v.
 
 Sw.
 
 Fla. Reg’l Med. Ctr., Inc.,
 
 668 So.2d 175, 177 (Fla.1995). Further, even when the doctrine existed, it applied only to make a husband liable for his wife’s debts for “necessaries” — not to make spouses agents of each other for all purposes as a matter of law.