ON MOTION FOR REHEARING

CONNER, J.
We grant the Appellant’s motion for rehearing, withdraw our opinion dated August 3, 2011, and issue the following in its place:
Jack and Nancy Lepisto appeal a non-final order compelling them to arbitrate a lawsuit brought under the Assisted Living Facilities Act, section 429.29, Florida Statutes. We have jurisdiction. Fla. R.App. P. 9.130(a)(3)(C)(iv). On appeal, the Lepis-tos contend the trial court erred in compelling arbitration when the agreement was not signed by Jack Lepisto or by Nancy Lepisto as his authorized representative. The Lepistos also assert that the trial court erred in failing to appoint an arbitrator when the arbitrator named in the agreement refused the appointment. Further, the Lepistos contend the agreement is undonscionable because it contains a provision that limits the assisted living facility’s liability. We reverse on the first issue, and therefore find it unnecessary to address the remaining issues.
Jack Lepisto was a resident of The Pointe at Newport Place, an assisted living facility (“Newport Place”). Prior to entering Newport Place, Jack executed a durable power of attorney naming his wife Nancy as his attorney-in-fact. To enroll Jack in Newport Place, Nancy presented the power of attorney to Newport Place and executed an Assisted Living Community Contract (“the Contract”). The Contract provided that “[i]n consideration of the Landlord’s acceptance of you as a resident at the Community, Nancy Lepisto agrees to act as the ‘Financially Responsible Party’ and/or Nancy Lepisto agrees to act as the ‘Resident’s Representative’ accepting their respective rights and obligations as set forth in this Agreement.” The Contract defined the terms “Financially Responsible Party” and “Resident’s Representative” as follows:
17. FINANCIALLY RESPONSIBLE PARTY
The “Financially Responsible Party” is jointly and severally liable with the Resident for all monetary obligations under this Agreement; including payment of the Rent, Leveling Fee and all other amounts that become due to the Landlord under this Agreement. The Financially Responsible Party may also be the Resident’s Representative.
18. RESIDENT’S REPRESENTATIVE
“Resident’s Representative” means an individual designated by the Resident to assist the Resident in making decisions about the Resident’s care or has been designated to make decisions on the Resident’s behalf regarding the Resident’s care. This may include an individual that holds a power of attorney or guardianship. The Resident’s Representative may also be the Financially Responsible Party.
Further, there was an Addendum to the Contract (“the Addendum”) which provided for arbitration of disputes between the parties. The Addendum, provides, in relevant part:
The Parties desire to resolve disputes between them as expeditiously and economically as possible. Therefore, any claim or dispute (including those based on contract, negligence or statute) amongst the Parties, involving an amount in excess of $15,000, arising out of or related to this Agreement, the Establishment or the services/care provided to the Resident, shall be resolved by binding arbitration administered by *91 the American Arbitration Association in accordance with its Commercial Arbitration rules....
Shortly after becoming a resident of Newport Place, Jack was injured. The Lepistos brought suit against Newport Place, seeking damages. Newport Place moved to compel arbitration based on the Addendum, and the trial court granted the motion.
The Lepistos argue that the trial court erred by compelling arbitration because although Nancy had signed the Addendum, she had signed only as the “Financially Responsible Party,” not “the Resident’s Representative.” They argue that pursuant to the express terms of the Contract, by signing only as the Financially Responsible Party, she was signing on her own behalf, not as Jack’s representative. They contend that by signing only as the Financially Responsible Party, the Addendum bound Nancy to arbitrate only a dispute over Jack’s bills, not claims arising out of services or care provided to him. Further, they assert that Jack is not bound to the Addendum, as Nancy did not sign the addendum as his representative, and Jack did not personally sign the Addendum.
The Lepistos rely on Fletcher v. Huntington Place Limited Partnership, 952 So.2d 1225 (Fla. 5th DCA 2007). There, Fletcher had signed an admissions agreement for her mother’s nursing home. The agreement contained an arbitration clause. Fletcher signed the agreement only in the place for a person who “controls funds or assets that could be used to pay the resident’s charges.” She did not sign the agreement in her capacity as her mother’s representative. Later, when the daughter sued the nursing home as representative of her mother’s estate, the trial court compelled arbitration. The Fifth District reversed because Fletcher had not signed the agreement as her mother’s representative, only in her individual capacity as the person who controlled the funds.
Newport Place makes four arguments in support of affirming the order compelling arbitration. First, Newport Place argues that Nancy clearly signed the Addendum on Jack’s behalf as his representative and therefore assented to arbitration. Relying on the layout of the Addendum, Newport Place claims Nancy signed the Addendum as a Resident’s Representative because Nancy’s name and signature appear on a signature block that visually appears immediately above the title “Resident’s Representative.”
An examination of the contract shows that there are four lines for signatures, and each signature appears below the relevant title. For example, the signature of the Facilities’ executive director, Matt Sar-nelli, appears below the title “Horizon Bay Senior Communities.” The signature line for Jack Lepisto appears below the title “Resident.” The name and signature for Nancy Lepisto appears below, the title “Financially Responsible Party.”
Nevertheless, Newport Place asserts that Nancy agreed to serve in a dual capacity as the financially responsible party and as the resident’s representative, despite signing the signature block only as the financially responsible party. Newport Place points out that the Contract provides:
In consideration of the Landlord’s acceptance of [Jack Lepisto] as a resident of the Community, Nancy Lepisto agrees to act as the “Financially Responsible Party” and/or Nancy Lepisto agrees to act as the “Resident’s Representative,” accepting their respective rights and obligations as set forth in this Agreement.
*92 Newport Place argues that the Contract identified Nancy Lepisto by name as both the “Financially Responsible Party” and/or “Resident Representative” to the Contract and Addendum, so she should be deemed to serve both roles. There is no merit to this argument. The mere fact that the Contract allows for the same person to serve both as representative and as the financially responsible party does not mean that the person was signing in both capacities, particularly when signing a signature below a specific title indicating one capacity and not both capacities.
Newport Place further contends that the Lepistos’ characterization of the Addendum as merely an agreement to arbitrate all financial disputes is unreasonable. It argues that to accept Nancy Lepisto’s argument renders the phrase agreeing to arbitrate “any claim or dispute” to be of no effect, relying on Central National Bank of Miami v. Muskat Corp. of America, Inc., 430 So.2d 957 (Fla. 3d DCA 1983). There, a corporation borrowed money from the bank and the corporation executed a promissory note. A separate guaranty agreement was also executed and the name “Adolfo Muskat” was typed in, but the signature said “Adolfo Muskat, President.” In a suit to hold Muskat individually liable, he contended that by placing “President” after his name, he had guaranteed the note only as president of the corporation, not personally. The court held the fact that Muskat added the word “president” after his name on the guarantee could not defeat the agreement’s purpose of making him a personal guarantor of the corporation’s note. The court explained that if the guaranty was a corporate guaranty it would add nothing to the loan transaction because the corporation was already liable under the note itself. The court pointed out that the document provided for an individual signature, and Muskat should not be able to alter or destroy that individual liability by adding “president.” Id. at 958. Central National Bank is distinguishable from the present case because there the whole purpose of the guaranty was to bind Muskat individually. Here the same is not true. The Contract allows for two different types of liability: liability as a representative of Jack Lepisto or only financial liability for his care. By signing only under the heading of “Financially Responsible Party,” Nancy agreed only to individually assume financial liability.
“As a general rule, only the actual parties to the arbitration agreement can be compelled to arbitrate.” Stalley v. Transitional Hosps. Corp. of Tampa, 44 So.3d 627, 629 (Fla. 2d DCA 2010). “[A]n exception to this general rule exists when the signatory of the arbitration agreement is authorized to act as the agent of the person sought to be bound, and ‘[n]on-signatories may be bound by an arbitration agreement if dictated by ordinary principles of contract law and agency.’ ” Id. at 630 (quoting Martha A. Gottfried, Inc. v. Paulette Koch Real Estate, Inc., 778 So.2d 1089, 1090 (Fla. 4th DCA 2001)). Although in this case, unlike in Stalley, Nancy had the authority to bind Jack to both the Contract and the Addendum, there is no evidence that she did so when she merely signed the Contract and Addendum in her individual capacity as the financially responsible party.
Second, Newport Place argues that if there is a dispute over whether Nancy signed the Addendum in a representative capacity, then the Addendum is ambiguous. Noting that when a contract is ambiguous, a court must receive extrinsic evidence to resolve the ambiguity, Newport Place argues that without taking evidence, the Lepistos cannot prove their theory that Nancy Lepisto actually signed on the *93 line for “Financially Responsible Party.” Newport Place points out that the Lepistos have not requested a remand for a determination of what any ambiguity would mean. Thus the failure to request remand requires affirmance. However, we find there is no ambiguity in the Contract. As indicated above, it is clear from the layout of the Contract and Addendum that Nancy Lepisto was signing only as the Financially Responsible Party.[1]
Third, Newport Place argues that it is for the arbitrator, not a court, to decide whether a valid arbitration agreement exists between the Lepistos and Newport Place. Newport Place acknowledges that as a general rule a court and not an arbitrator must decide whether parties decided to arbitrate arbitrability. See First Options of Chicago Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). However, Newport Place argues that where there is clear and unmistakable evidence that the parties agreed to arbitrate, then the issue of arbi-trability is for the arbitrator, citing Terminix International Company v. Palmer Ranch Limited Partnership, 432 F.3d 1327 (11th Cir.2005). In that case, the parties had agreed that the American Arbitration Association’s (“AAA”) rules would apply to their agreement. Rule 8(a) of the AAA’s rules provided that the arbitrator “shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.” Thus, the court concluded that the arbitrator would answer the question of arbitrability of disputes. The court held that by incorporating AAA rules into the agreement, the parties clearly and unmistakably agreed the arbitrator should decide whether the arbitration clause was valid. Id. at 1332. The Addendum in this case states that any claims arising out of the contract shall be resolved “by binding arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules.” However, in Terminix there was no question that the parties had entered into a contract. Here, the parties dispute whether and in what capacity Jack and Nancy Lep-isto entered into the Contract. “The issue of the contract’s validity is different from the issue [of] whether any agreement between the alleged obligor and obligee was ever concluded.” Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 n. 1, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). Therefore, it is for a court, not an arbitrator, to decide in the first instance whether a party signed a contract and assented to its terms. Id. (citing Chastain v. Robinson-Humphrey Co., 957 F.2d 851 (11th Cir.1992)).
Finally, Newport Place argues that even if Nancy signed only on the “Financially Responsible Party” line, she should be bound to the Contract as a representative of Jack based upon the holding in Consolidated Resources Healthcare Fund I, Ltd. v. Fenelus, 853 So.2d 500 (Fla. 4th DCA 2003). There, a woman was admitted to a nursing home. Her son signed the contract, which contained the arbitration clause, on her behalf. However, the representative of the nursing home failed to sign the agreement on the line for the *94 nursing home and instead signed on the “witness” line. The representative of the nursing home testified that she signed the various documents in her capacity as a nursing home representative. When the son sued the nursing home for negligence and wrongful death of his mother, the nursing home moved to compel arbitration. The trial court found that no contract was formed because this signature was on the wrong line and the representative had signed only as a witness and not in her capacity as nursing home representative. We rejected the trial court’s analysis, noting that a contract is binding when both parties perform under it, even if only one party signs the contract, because a party’s assent to a contract can be shown by its acts or conduct. We determined that the nursing home had clearly assented to the contract by performing the contract for more than three years. Therefore, the agreement was deemed valid.
The present case is distinguishable from Consolidated, Resources. In Consolidated Resources, there was evidence that the non-signing party sought to be bound by the contract (the nursing home) had assented to the contract by providing services to the client for over three years. In this case, there was no evidence presented that the non-signing party, Jack Lepisto, assented to the contract. Despite the fact that he received services from the nursing home and those services were paid on his behalf, there is nothing in the record before us to prove those services were paid by Jack or his representative. Instead, the record shows the payments were made by Nancy Lepisto, who signed the contract as the Financially Responsible Party. Thus, there is no evidence that Jack or his representative sought to be bound to the Addendum. See Stalley, 44 So.3d at 632. Therefore, we reverse the trial court’s order compelling arbitration, and remand for further proceedings.

Reversed, and remanded.

WARNER and LEVINE, JJ., concur.

. Either side could have requested an eviden-tiary hearing if it felt one was necessary to show Nancy signed the Contract or the Addendum as a representative of Jack. See Rowe Enters, v. Int’l Sys. & Elecs. Corp., 932 So.2d 537, 541-42 (Fla. 1st DCA 2006) (under Florida Arbitration Code, trial court must hold expedited evidentiary hearing upon request). Instead, the parties chose to proceed without an evidentiary hearing and to base their arguments on the facial appearance of the documents. Cf. Berkowitz, Dick, Pollack & Bryant, CPA & Consultants, LLP. v. Smith, 49 So.3d 309 (Fla. 4th DCA 2010).