DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MANOR OAKS, INC.,** d/b/a **MANOR OAKS NURSING &
REHABILITATION CENTER,**
Appellant,

v.

**ROSEMARIE CAMPBELL,** as Personal Representative of the
Estate of **STANLEY CHANSON,**
Appellee.

No. 4D18-3297

[July 31, 2019]

Appeal of a non-final order from the Circuit Court for the Seventeenth
Judicial Circuit, Broward County; Carlos A. Rodriguez, Judge; L.T. Case
No. CACE-17-016051 (14).

Richard T. Woulfe, Mark A. Rutledge, and Scott C. Cochran of Billing,
Cochran, Lyles, Mauro & Ramsey, P.A., Fort Lauderdale, for appellant.

Douglas F. Eaton of Eaton & Wolk, PL, Miami, for appellee.

GROSS, J.

The heart of this case is whether a document that designates a health
care surrogate is broad enough to allow that surrogate to consent to an
arbitration provision in a nursing home admission form. We hold that the
narrow focus of the document is on the surrogates' power to make health
care decisions, not business choices concerning dispute resolution, so we
affirm the order of the trial court denying appellant's motion to compel
arbitration.

On May 1, 2009, Stanley Chanson signed a document, titled "Durable
Power of Attorney Containing Health Care Surrogate Provisions" ("the
Document"), in which he appointed his friend, Rosemarie Campbell, and
Mark Chanson, his son, "as [his] attorney in fact to manage [his] affairs as
. . . '**health care surrogate[s]**'" (emphasis added).

On December 9, 2016, at age eighty-six, Chanson was admitted to
Manor Oaks Nursing and Rehabilitation Center ("nursing home").

Campbell signed the nursing home's admission paperwork which included an "ARBITRATION PROVISION" that read:

> ARBITRATION PROVISION: Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, including but not limited to claims under Chapters 400 and 415, FS; in excess of $5,000.00 shall be settled by arbitration in accordance with the provisions of the Florida Arbitration Code found at Chapter 682, Florida Statutes, and judgement upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

Although the Document is entitled "Durable Power of Attorney Containing Health Care Surrogate Provisions," the authority that it delegates involves only matters pertaining to health care.

The first section of the Document, "HEALTH CARE SURROGATE PROVISIONS PURSUANT TO F. S. SECTIONS 709.08 AND 765," reads:

> In the event that I have been determined to be incapacitated to provide informed consent for medical treatment and surgical and diagnostic procedures, I wish to designate as my surrogate **for health care decisions, the health care surrogate named herein.**
>
> This designation revokes any prior **health surrogate** designation which I may have made.
>
> I fully understand that this designation will permit my **healthcare surrogate** to make **health care decisions** and to provide, withhold or withdraw consent on my behalf; to apply for public benefits to defray the cost of health care; and to authorize my admission to or transfer from a health care facility.

(Emphasis added).

The Document then lists "Additional Instructions," under which Chanson's "healthcare surrogate may" act. The nine numbered paragraphs all concern matters pertaining to health care.

The Document's third section reads "INTERPRETATION AND GOVERNING LAW." There, the agreement states:

> This instrument is to be **construed and interpreted as a health care surrogate** [sic] as provided for in Florida Statute Section 765 . . . .  The enumeration of specific powers herein is not intended to, nor does it, limit or restrict the general powers herein granted to my **health care surrogate**.

(Emphasis added).

Chanson died in March of 2017, and Campbell, as personal representative of his estate, sued the nursing home for damages pursuant to Chapter 400, Florida Statutes, entitled "Nursing Homes and Related Health Care Facilities."  The nursing home moved to stay and compel arbitration.  The trial court denied the motion.  The nursing home timely appealed that order.  *See* Fla. R. App. P. 9.130(a)(3)(C)(iv).

On appeal, we review an order denying a motion to compel arbitration *de novo*.  *See DFC Homes of Fla. v. Lawrence*, 8 So. 3d 1281, 1282 (Fla. 4th DCA 2009) (citing *Vacation Beach, Inc. v. Charles Boyd Const., Inc.*, 906 So. 2d 374, 376 (Fla. 5th DCA 2005)).  Where not ambiguous, the interpretation of a power of attorney or designation of a health care surrogate is a question of law, subject to *de novo* review.  *See Candansk, LLC v. Estate of Hicks ex rel. Brownridge*, 25 So. 3d 580, 582 (Fla. 2d DCA 2009).

Often, courts analyze powers of attorney ("POAs") to determine whether they authorize a designee to consent to an arbitration provision in a contract.  A trial court "correctly compels the enforcement of arbitration provisions where a POA either makes a specific grant of such authority or 'unambiguously makes a broad, general grant of authority to the attorney-in-fact.'"  *Sovereign Healthcare of Tampa, LLC v. Estate of Huerta ex rel. Huerta*, 14 So. 3d 1033, 1034 (Fla. 2d DCA 2009) (quoting *Jaylene, Inc. v. Moots*, 995 So. 2d 566, 570 (Fla. 2d DCA 2008)).

To determine whether a POA contains "a sufficiently broad and unambiguous grant of general authority . . . requires examination of the language of any catch-all provision contained in a POA, as well as of the relationship of that language to . . . types of interests over which an attorney-in-fact is specifically granted authority . . . ."  *Huerta*, 14 So. 3d at 1034.  "Generally, powers of attorney are strictly construed and will be closely examined in order to ascertain the intent of the principal."  *De Bueno v. Castro*, 543 So. 2d 393, 394 (Fla. 4th DCA 1989).  Powers of attorney "will be held to grant only those powers that are specified."  *Estate of Irons ex rel. Springer v. Arcadia Healthcare, L.C. Springer,* 66 So. 3d 396,

398 (Fla. 2d DCA 2011) (quoting *Kotsch v. Kotsch*, 608 So.2d 879, 880 (Fla. 2d DCA 1992)).

In this case, the Document gave limited, rather than broad, authority to "health care surrogate[s]" Campell and Mark Chanson. The entire focus of the Document concerns matters pertaining to health care decisions which cannot be stretched to embrace business decisions regarding dispute resolution.

The Agreement refers to a "health care surrogate" over twenty times. The narrow focus of the Document on health care issues expresses the intent of the drafter. It appears that the Document was copied from an online form, titled "Durable Power of Attorney Containing Health Care Surrogate Provisions and Provisions Relating to Transfer of Real Property Including Homestead Property"; the drafter of the Document attempted to remove all portions granting general powers and real estate powers, leaving only portions related to healthcare decisions. Sandra G. Krawitz, *The Florida Durable Power of Attorney Becomes a Document to Respect*, Fla. B.J., Dec. 1995, at 14, https://www.floridabar.org/the-florida-bar-journal/the-florida-durable-power-of-attorney-becomes-a-document-to-respect-1995-changes/.

Another indicator of the limited scope of the Document is that it grants the surrogates authority under Chapter 765, Florida Statutes, entitled "Health Care Advance Directives." That Chapter defines a "[h]ealth care decision" as:

> (a) Informed consent, refusal of consent, or withdrawal of consent to any and all health care, including life-prolonging procedures and mental health treatment, unless otherwise stated in the advance directives.
>
> (b) The decision to apply for private, public, government, or veterans' benefits to defray the cost of health care.
>
> (c) The right of access to all records of the principal reasonably necessary for a health care surrogate to make decisions involving health care and to apply for benefits.
>
> (d) The decision to make an anatomical gift pursuant to part V of this chapter.

§ 765.101(5), Fla. Stat. (2011). The statute does not include within the definition of a "health care decision" the ability to determine the *forum* in

which disputes arising from health care decisions are to be resolved. This is consistent with our observation in *Blankfeld v. Richmond Health Care, Inc.*, that "waiving the right to sue for damages in the courts for violations of the [Nursing Home Residents] Act or common law negligence is not a health care decision." 902 So. 2d 296, 300 (Fla. 4th DCA 2005); *see also Stalley v. Transitional Hosps. Corp. of Tampa, Inc.*, 44 So. 3d 627, 630 (Fla. 2d DCA 2010) (recognizing the "arbitration agreement is not related to [resident's] medical treatment or the provision of health care services to him").

*Springer* is on point here. 66 So. 3d at 396-99. The nursing home in *Springer,* like the nursing home in this case, argued that under Florida Statutes section 709.08 the POA granted the agent authority to agree to arbitration. *Id.* at 398-99. However, the *Springer* court strictly construed the POA's language, stating that "where nothing in a [POA] gives an attorney-in-fact legal authority to enter into an arbitration agreement on a person's behalf, a trial court is incorrect to grant a nursing home's motion to compel arbitration based on an admission agreement entered into by the attorney-in-fact." *Id.* at 399 (quoting *Carrington Place of St. Pete, LLC v. Estate of Milo ex rel. Brito*, 19 So. 3d 340, 341 (Fla. 2d DCA 2009)).

Here, much of the nursing home's argument relies on the mention of "Power of Attorney" in the Document's title. The body of the Document clearly narrows its scope to health care matters, which do not include decisions regarding arbitration of disputes.

The nursing home relies on several cases stating that authority to enter into arbitration agreements need not be explicit but can be inferred from use of broad language in the POA. *See Zephyr Haven Health & Rehab. Ctr., Inc. v. Estate of Clukey*, 133 So. 3d 1230 (Fla. 2d DCA 2014); *Estate of Smith v. Southland Suites of Ormond Beach*, 28 So. 3d 103 (Fla. 5th DCA 2010); *Huerta*, 14 So. 3d at 1033; *Candansk, LLC v. Estate of Hicks ex rel. Brownridge*, 25 So. 3d 580 (Fla. 2d DCA 2009); *Jaylene*, 995 So. 2d at 566; *Alterra Healthcare Corp. v. Bryant*, 937 So. 2d 263, 269 (Fla. 4th DCA 2006).

However, in each of the cited cases, where the court granted a motion to compel arbitration, the court relied upon language containing broader grants of authority than contained in the Document. In *Smith*, the POA granted vast authority "generally to do and perform all matters and things . . . whether involving real property or not"; in *Huerta*, the POA set "forth a broad and unambiguous grant of authority" where the agent could "'sign any and all releases or consent required'"; in *Candansk*, the POA granted the agent extensive authority to "'act in [the principal's] name, place and

stead in any way which [he, himself could] do'"; in *Jaylene*, the POA contained broad language granting " 'general power'"; and in *Alterra*, the POA explicitly gave the agent authority to agree to arbitration. *Smith*, 28 So. 3d at 104; *Huerta*, 14 So. 3d at 1035; *Candansk*, 25 So. 3d at 582; *Jaylene*, 995 So. 2d at 568-69; *Alterra*, 937 So. 2d at 269.

The narrow focus of the Document on health care matters does not extend to the arbitration clause in the admission documents. We therefore affirm the order denying the motion to compel arbitration.

LEVINE, C.J., and WARNER, J., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***