DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

UBS FINANCIAL SERVICES, INC.,

Appellant,

v.

CATHERINE MEO SAUNDERS; JOSEPH A. MEO, individually
and as co-trustee of the Robert and Agnes Meo Trust fbo
Catherine Saunders; and RICHARD SCHUTT,

Appellees.

No. 2D2024-2958

_____

Click or tap to enter a date.

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for
Manatee County; Diana L. Moreland, Judge.

Peter S. Fruin of Maynard Nexsen, PC, Birmingham, Alabama, for
Appellant.

Mark J. Albrechta, Tampa, for Appellee Catherine Meo Saunders.

No appearance for remaining Appellees.

KHOUZAM, Judge.

In this nonfinal appeal, Defendant UBS Financial Services, Inc.,
timely challenges an order denying its motion to compel arbitration of
claims brought by Plaintiff Catherine Meo Saunders.  Because her
lawsuit seeks a benefit under the subject contract, the trial court should

have compelled arbitration.  We therefore reverse and remand for arbitration.

## BACKGROUND

The following facts, taken from the complaint and the subject agreement, are undisputed.

In 2001, Mrs. Meo Saunders' brother Joseph A. Meo opened a Resource Management Account (the Trust Account) with UBS's predecessor on behalf of the Robert & Agnes Meo Trust FBO Catherine Meo Saunders (the Trust).  Mr. Meo signed the account application on behalf of the Trust as "Joseph A. Meo, Trustee."  In doing so, he agreed "on behalf of the account holder . . . to all of the terms and conditions in the Master Account Agreement."

In turn, the Master Account Agreement defines the "Client" as the "trust" designated as the "Account Holder."  Under the agreement, UBS is to provide various resource management services to the Client, including sending "monthly or quarterly account statements."  The agreement permits the Client to take various actions upon the Trust Account including the ability to "write checks or authorize drafts against" it.

Among other terms, the agreement also requires arbitration of "any and all controversies which may arise between [UBS] and Client concerning any account, transaction, dispute or the construction, performance or breach of this Agreement."

In 2024, Mrs. Meo Saunders filed a complaint against Mr. Meo, both individually and as co-trustee of the Trust, and against UBS.  The complaint expressly alleges that Mrs. Meo Saunders is both a beneficiary and co-trustee of both the Trust and the Trust Account.

As against UBS, the complaint alleges that as a co-trustee of the Trust, Mrs. Meo Saunders has the same authority over the Trust Account

as her brother Mr. Meo. It alleges that UBS "[f]ail[ed] and/or refus[ed] to recognize Plaintiff's position and authority as co-trustee of the Trust." It alleges that, contrary to Mrs. Meo Saunders' authority as co-trustee, UBS took several wrongful actions, including: (1) placing a freeze on the Trust Account, (2) refusing to honor a check drawn on the Trust Account, (3) failing to send her statements of the Trust Account, and (4) refusing to communicate necessary information about the Trust Account to her.

UBS moved to compel arbitration, attaching copies of the account application and the Master Account Agreement. Acknowledging that Mrs. Meo Saunders did not sign the agreement herself, UBS argued that because she claimed benefits of the Master Account Agreement with her lawsuit, she was estopped from avoiding the arbitration provision therein.

Mrs. Meo Saunders responded, contending that she is not bound by the arbitration clause primarily on the basis that she "was not a party to the UBS account agreement and was not a signatory to the agreement." She also asserted that she "does not derive a direct benefit from the agreement" and that she "is not the client named in the agreement."

Following a hearing, the trial court entered an order denying the motion to compel. The court specifically found "that there are no documents that evidence Plaintiff's interest in the relevant contract, and that there are no documents to support [UBS]'s claims."

This nonfinal appeal followed.

## ANALYSIS

On appeal, UBS contends that the trial court reversibly erred in declining to compel arbitration. Specifically, it asserts that even though Mr. Meo was the one who opened the Trust Account and signed on behalf

of the Trust, Mrs. Meo Saunders should likewise be bound by the terms of the arbitration clause in the Master Account Agreement because her claim expressly seeks the benefits of that agreement. We agree.

"The standard of review we use when examining a trial court's construction of an arbitration agreement as well as its application of the law to the facts is de novo." *Venn Therapeutics, LLC v. CAC Pharma Invs., LLC*, 382 So. 3d 6, 11 (Fla. 2d DCA 2024) (citing *Addit, LLC v. Hengesbach*, 341 So. 3d 362, 366 (Fla. 2d DCA 2022)). In so reviewing, we take all well-pleaded allegations in the complaint as true. *See Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013).

Our supreme court has explained:

> Generally, the three fundamental elements that must be considered when determining whether a dispute is required to proceed to arbitration are: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived. *See Seifert v. U.S. Home Corp.,* 750 So. 2d 633, 636 (Fla. 1999). Arbitration provisions are contractual in nature and remain a matter of contractual interpretation. *See id.* The intent of the parties to a contract, as manifested in the plain language of the arbitration provision and contract itself, determines whether a dispute is subject to arbitration. *See id.* Courts generally favor such provisions, and will try to resolve an ambiguity in an arbitration provision in favor of arbitration. *See id.; see also Qubty v. Nagda,* 817 So. 2d 952, 956 (Fla. 5th DCA 2002).

*Id.*

This case revolves around the first element, namely, whether a valid written agreement to arbitrate the subject claims exists, where Mrs. Meo Saunders did not sign the agreement with the arbitration clause.

In that regard, this court has recently explained: "Because arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."

4

*Integrated Health Servs. at Cent. Fla., Inc. v. Est. of DeSantis*, 407 So. 3d 547, 551 (Fla. 2d DCA 2025) (quoting *Pezeshkan v. Manhattan Constr. Fla., Inc.*, 313 So. 3d 948, 951 (Fla. 2d DCA 2021)). Thus, "[a]s a general rule, only the actual parties to the arbitration agreement can be compelled to arbitrate." *Stalley v. Transitional Hosps. Corp. of Tampa, Inc.*, 44 So. 3d 627, 629 (Fla. 2d DCA 2010).

But the general rule has exceptions. In particular, "a non-signatory may be bound to arbitrate under certain circumstances: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/alter ego; and (5) estoppel." *Allied Pros. Ins. v. Fitzpatrick*, 169 So. 3d 138, 142 (Fla. 4th DCA 2015) (citing *Johnson v. Pires*, 968 So. 2d 700, 701 (Fla. 4th DCA 2007)). This case involves the fifth circumstance: estoppel.

"In the arbitration context, equitable estoppel provides that '[a] party [to a lawsuit] may not rely on a contract to establish his claims while avoiding his obligation under the contract to arbitrate such claims.' " *Paquin v. Campbell*, 378 So. 3d 686, 690 (Fla. 5th DCA 2024) (alterations in original) (quoting *BDO Seidman, LLP v. Bee*, 970 So. 2d 869, 875 (Fla. 4th DCA 2007)).

In *Fitzpatrick*, the Fourth District reversed an order denying a motion to compel arbitration even though those resisting arbitration were not parties to, and did not sign, the insurance policy containing the arbitration clause. 169 So. 3d at 142. There, the court held:

> We conclude that estoppel applies here to bind the plaintiffs to arbitration. More specifically, the plaintiffs cannot claim they are entitled to the benefit of the policy's coverage provision while simultaneously attempting to avoid the burden of the policy's arbitration provision. *See Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 2012 WL 6012972 (11th Cir. Dec. 4, 2012) ("In essence, equitable estoppel precludes a party from claiming the benefits of some of the provisions of a contract while simultaneously attempting to

avoid the burdens that some other provisions of the contract impose."); *Stalley,* 44 So. 3d at 632 ("It is true that an individual who makes use of a contract as long as it works to his or her advantage is estopped from avoiding the contract's provisions concerning the forum in which any dispute should be resolved."); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH,* 206 F.3d 411, 418 (4th Cir. 2000) ("In the arbitration context, . . . a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when [the party] has consistently maintained that other provisions of the same contract should be enforced to benefit [the party].").

*Id.* (alterations in original) (emphasis added).

The same rationale applies here. Mrs. Meo Saunders' lawsuit expressly asserts that she is a co-trustee of the Trust that is the Client as defined in the Master Account Agreement with UBS. The Trust Account is expressly governed by the Master Account Agreement.

By her lawsuit, Mrs. Meo Saunders seeks authority over the Trust Account equal to that of Mr. Meo, the signatory. She claims entitlement to direct account services that UBS is obligated to provide only by virtue of the Master Account Agreement, which places such authority squarely in the hands of the Client. In this context, by expressly claiming the benefits of the Master Account Agreement in her lawsuit, Mrs. Meo Saunders should be estopped from disclaiming its arbitration provision.[1]

---

[1] *Paquin* draws a distinction between direct and indirect benefits, saying only the former can result in estoppel. 378 So. 3d at 690-91. UBS contends that decision is incorrect because no other Florida case recognizes such a distinction; Mrs. Meo Saunders responds that the law is "consistent[]" in upholding it, although she cites no other Florida cases to that effect. Ultimately, we need not resolve this question because the benefits claimed here are unquestionably "direct," as they "are benefits 'flowing directly from the agreement.' " *Id.* at 691 (quoting *Taylor Grp., Inc. v. Indus. Distribs. Int'l Co.,* 859 F. App'x 439, 447 (11th Cir. 2021)).

Because Mrs. Meo Saunders by her lawsuit seeks benefits under the subject contract, the trial court should have estopped her from disclaiming its arbitration provision and should have compelled arbitration. Accordingly, we reverse and remand for arbitration.

Reversed and remanded.

NORTHCUTT and MORRIS, JJ., Concur.

_____

Opinion subject to revision prior to official publication.